**STATE of Missouri, Respondent,**

v.

**Robert (Bobby) RONIMOUS, Appellant.**

No. 46610.

Supreme Court of Missouri,

Division No. 2.

Jan. 12, 1959.

Roswell P. Henderson, Moberly, for appellant.

John M. Dalton, Atty. Gen., Robert E. Hogan, Sp. Asst. Atty. Gen., for respondent.

STORCKMAN, Presiding Judge.

The defendant, Robert (Bobby) Ronimous, by an information filed in the Circuit Court of Boone County, was charged with the felonies of burglary and larceny. The venue was changed to Randolph County where the jury acquitted him of the larceny charge, but found him guilty of burglary and assessed his punishment at two years in the penitentiary. His motion for new trial was overruled and he has appealed from the judgment of conviction.

■ No brief has been filed on behalf of the appellant, and the case is before us on the transcript of the record and the brief of the respondent. In these circumstances our review extends to the essential record and allegations of error properly preserved in the motion for new trial. Supreme Court Rules 27.20 and 28.08, 42 V.A.M.S.; State v. Garrison, Mo., 305 S.W.2d 447, 449 [1]; State v. Swiney, Mo., 296 S.W.2d 112, 114 [1].

■ The defendant asserts eleven grounds of error in his motion for new trial; however, some of them are insufficient to preserve anything for review.

Supreme Court Rule 27.20 provides that the motion for new trial shall set forth in detail and with particularity the specific grounds or causes therefor. See also § 547.030 RSMo 1949, V.A.M.S. Assignment No. 3 of defendant's motion, that "the court erred in admitting incompetent, irrelevant and immaterial evidence offered by the Prosecuting Attorney," has been held not sufficiently specific to preserve anything for review. State v. Reed, Mo., 298 S.W.2d 426, 428 [8]. Likewise, assignment No. 6, that "the court erred in giving each and every instruction given by the court of its own motion," is not sufficiently specific. State v. Gaddy, Mo., 261 S.W.2d 65, 67–68 [2, 4].

Three of the specifications in the motion for new trial are that the verdict is "against the evidence," "against the greater weight of the credible evidence in the case," and "against the law under the evidence." These and allegations of similar import have repeatedly been held too general to preserve anything for review. State v. Garrett, Mo., 282 S.W.2d 441, 442 [2, 3]; State v. Daegele, Mo., 302 S.W.2d 20, 22 [1, 2].

■ The court gave an instruction on circumstantial evidence in a form often approved by this court. See State v. Jordan, Mo., 235 S.W.2d 379, 383 [6]. The defendant states in his motion that the court erred in giving this instruction, but does not state wherein or why and leaves us with nothing to review. State v. McLachlan, Mo., 283 S.W.2d 487, 489 [5].

■ Item No. 10 of defendant's motion states that "the court erred in overruling defendant's objection to the improper argument of the Prosecuting Attorney to the jury to the effect that defendant and his counsel were persons without good reputation." The allegation does not prove itself and, since the argument of counsel is not in the transcript of the record on appeal, there is nothing before us for review. State v. White, Mo., 301 S.W.2d 827, 829 [7].

The evidence adequately established that the Bambi Club, a tavern located on U. S. Highway No. 40 in the City of Columbia, was forcibly entered during the early morning of June 28, 1956, and that money and other property was stolen. The crime was committed between the closing time of 1:30 a. m. and 4:00 a. m. Entrance was effected by breaking a lock on the rear door. A cigarette vending machine was broken into and money and cigarettes were stolen. Other coin operated amusement devices, such as a juke box, shuffle board and bowling games, were robbed of their proceeds. The vending machine and the amusement devices were operated by quarters, dimes and nickels. Pennies were taken from an open cash register. Some food, a gallon jar of sausages and a five-pound piece of cheese, was also taken.

The defendant alleges that the trial court erred in permitting the state to introduce evidence of an entirely separate and different crime thereby prejudicing the defendant with the jury. At the time of trial, William Junior Deprair was serving a term in the Missouri State Penitentiary for his part in the burglary and larceny of the Bambi Club. Placed on the stand by the state, he undertook to repudiate a written statement and oral admissions made on the day of his arrest implicating the defendant and Harold Dean Redifer in the burglary of the Bambi Club as well as the Tiger Club, another tavern nearby. His testimony at the trial was that he had gone from Moberly to Columbia alone in a 1948 Pontiac which he borrowed from the defendant. Without objection he was permitted to testify that he first broke into the Tiger Club where he took some plastic combs, cigarette lighters and money from the vending machines and amusement devices, and that he then went immediately to the Bambi Club nearby and burglarized it.

■ There was also evidence from police officers and others tending to show that the two taverns were both burglarized at about the same hour and apparently

both by the same persons and that these persons were the occupants of the 1948 Pontiac which was shown to have been in the vicinity at the time the burglaries were committed. When Deprair's written statement was read to the jury, the court excluded references to the Tiger Club, pursuant to defendant's objection. Clearly the court did not err in the respect charged. According to the state's evidence, both burglaries were accomplished on the same criminal excursion, elements of each were common to both and the loot was commingled. The fact that the defendant, when arrested, had in his possession articles identified as having been stolen from the Tiger Club, tended to place him near the scene of the crime for which he was being tried. A similar complaint was made in State v. Strait, Mo., 279 S.W. 109, 114 [10], and this court held: "But it is a rule that, when there is a common scheme, embracing two or more crimes, so related to each other that the proof of one tends to establish the other, then proof of such other crime is admissible." This rule has been applied frequently and recently. See State v. Atkinson, Mo., 293 S.W.2d 941, 942 [2]; State v. Saussele, Mo., 265 S.W. 2d 290, 296 [11]. The claim of error is denied.

■ The defendant charges the trial court erred in permitting the prosecuting attorney "to make late endorsements of witnesses" on the information. James Cook, a milk route driver for the Hillcrest Dairy, located across the highway and a little south from the Bambi Club, was permitted to testify over defendant's objection that when he went to work between 3:00 a. m. and 4:00 a. m. on June 28 he saw a police car drive up to the Club and stop. After it left he saw two men, walking fast, come around the southwest corner of the Club building. One was short and the other was taller, about six-feet tall, but the witness could not identify them. On the prosecuting attorney's statement that he had first learned of the witness that morning, the defendant's objection was overruled and the witness was permitted to testify.

The names of all material witnesses are required to be endorsed upon the indictment or information when it is filed, but the names of other witnesses may be added later by order of the court and upon notice to the defendant or his attorney. Supreme Court Rule 24.17; §§ 545.070 and 545.240. In this case the defendant made no affidavit of surprise, application for continuance or showing of prejudice which has been held necessary in such situations. State v. Farris, Mo., 243 S.W.2d 983, 987 [6]; State v. Derrington, Mo., 137 S.W.2d 468, 470 [6]; State v. Wilson, 321 Mo. 564, 12 S.W.2d 445, 446 [1]. There is nothing in the record to indicate that the prosecuting attorney was acting unfairly and the court did not abuse its discretion in permitting the witness to testify.

■ The other witness to whom an objection was made on this ground was one of defendant's witnesses who was recalled to the stand and further examined by the state in rebuttal. The complaint is clearly without merit because the rule and statutory requirements have been held not applicable to rebuttal witnesses. State v. Malone, Mo., 301 S.W.2d 750, 758 [25]; State v. Jennings, 326 Mo. 1085, 34 S.W.2d 50, 53 [5, 6].

■ The appellant also complains that the defendant was surprised in that the state was permitted to amend the information on three separate occasions. Other than the endorsement of additional witnesses, which we have already treated, the only amendment shown in the record is the filing of an amended information seven days before trial. No objection or application for continuance is shown; in fact, it does not appear in what respect the information was amended. There is nothing for us to review and the assignment is denied.

The defense was an alibi. The defendant did not testify, but his "girl friend"

Theora Anderson, also known as Tito Sparkman, testified that the defendant picked her up at her home the preceding evening at about 6:00 p. m. He was driving his brother's 1948 Pontiac automobile, which he had permission to use while his brother was in jail. The witness testified that she and the defendant visited a couple of taverns and a restaurant and during the evening saw William Junior Deprair and Harold Dean Redifer, the alleged accomplices, as well as other acquaintances. Deprair, according to Theora, borrowed the automobile for some undisclosed purpose and took defendant and the witness to her home at about 1:00 a. m. promising to return for the defendant. She and the defendant sat in the porch swing until about 3:00 a. m. when the defendant left to go to his home, Deprair having failed to return. Theora was a bartender at a tavern at the time of the trial; there was evidence that she had been convicted on peace disturbance charges and that her general reputation was not good. The defendant's mother testified the defendant was in his bed when she arose at 4:00 a. m. and the Pontiac car was not at the home; that she awakened the defendant at 4:45 a. m. to ask him where the automobile was and he told her, without further explanation, that "he lent it out." It was developed without objection in defendant's case that during the year 1955 the defendant was serving a term in the Missouri State Penitentiary for felonious assault, and that five or six years prior to the trial he had been committed to the Boonville Training School. The jury's failure to give credence to the defense testimony is understandable.

We have examined the transcript carefully and find the evidence that the defendant participated in the burglary of the Bambi Club to be substantial and sufficient. That his car was used was unquestioned. Among other witnesses, two policemen saw it there and took the license number. The evidence showed that the defendant, Deprair and Redifer had been drinking together during the evening and were to-gether as late as 12:30 to 1:00 a. m. The state's evidence tended to show that three persons committed the burglary; one was seen in the automobile, apparently serving as driver and lookout, and the other two were seen coming from the building. Deprair's testimony established that he and the defendant were together the next morning about 7:30 a. m., and that the three were together at a restaurant at about 8:00 a. m. Moberly policemen, in response to a call from the Columbia police department, went to the Ronimous home between 5:30 a. m. and 6:00 a. m. and saw the Pontiac car there with the right front tire missing; the motor was still hot. Combs taken from the Tiger Club were found under the front seat of the Pontiac automobile. At the time he was arrested, the defendant had on his person such a comb and a new and unused cigarette lighter of the type stolen in Columbia, as well as $4.12 in coins, consisting of 14 quarters, 5 dimes, 2 nickels and 2 pennies.

 A person who conspires with another to commit burglary may be convicted as a principal although not present at the time and place of the burglary. State v. Williams, 356 Mo. 1048, 204 S.W. 2d 748, 749 [2]; § 556.170 RSMo 1949, V.A.M.S. However, it appears reasonable to infer from all the facts and circumstances in evidence that the defendant was at the scene of the burglary and an active participant as a lookout and driver of the automobile. State v. Harre, Mo., 280 S.W. 2d 41, 43–44 [4].

██ Deprair was arrested about 12:30 p. m. on the day of the burglary and was taken to Columbia where he made a statement implicating the defendant which was reduced to writing and signed by Deprair. In Columbia he identified articles in the defendant's possession as part of the stolen property. About 4:00 p. m. or 5:00 p. m., after making the statement, Deprair was taken back to Moberly where he disclosed the hiding place of the loot which had not been divided. The written statement and other statements made by Deprair

about which there was testimony were made at a time when efforts were being made to conceal evidence of the crime and avoid exposure, and the trial court properly admitted evidence of such statements. State v. Strait, Mo., 279 S.W. 109, 114 [11, 12]; State v. Schnelt, 341 Mo. 241, 108 S.W.2d 377, 382 [5, 6]; State v. Johnson, Mo., 286 S.W.2d 787, 792 [7].

The statement of Deprair, strongly implicating the defendant, was that he, the defendant and Harold Redifer left Moberly about 1:00 a. m. or 1:30 a. m. in the Ronimous car and drove south on Highway 63 to Columbia. Deprair and Redifer forced a rear door of the Bambi Club and the defendant stayed outside in the automobile to act as lookout. The loot was put in the Ronimous car and they started their return trip to Moberly. The tire on the right front wheel blew out before reaching Moberly; since there was no spare tire, the defendant drove the rest of the way on the rim. The Pontiac car was driven to the Ronimous home and the stolen articles were transferred to the Redifer car. The three then drove to Sugar Creek Cemetery where they hid all that was not divided at the time. They made three apparently even piles of the money and each took his part. They then shot craps for awhile with the money they had stolen. About 12:15 p. m. Redifer went to Deprair's home and told him that the defendant had been arrested. Deprair and Redifer then drove to the cemetery again where Deprair put his money in a tin can and hid it. The two then returned to their homes and were arrested shortly thereafter. Deprair further stated that in Moberly he lied to the police officers and tried to mislead them, but they told him enough to convince him "that they had the goods on us," and after being taken to Columbia, he made the statements which were put in evidence. Later that afternoon he was taken back to Moberly and showed the officers where the remainder of the loot was hidden.

We have examined the record with respect to matter not required to be preserved in the motion for new trial and find no error. The information is sufficient and the verdict is in proper form and responsive to the issues. The defendant was granted allocution. The sentence and judgment are in accord with the verdict.

The judgment is affirmed.

All concur.