STATE of Missouri, Respondent,

v.

Gilbert MALLORY, Appellant.

No. 47790.

Supreme Court of Missouri,

Division No. 2.

June 13, 1960.

John Rasse, Edward R. Scott, Marshall, for appellant.

John M. Dalton, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Gilbert Mallory has been found guilty of burglary and larceny, the jury also found prior felony convictions and fixed his punishment at fifteen years' imprisonment, ten years for the burglary and five years for the larceny.

■ Upon the trial of his case the appellant was represented by court-appointed counsel but upon this appeal he is without counsel and it is the duty of this court to "render judgment upon the record before them." V.A.M.S. § 547.270. However, it was the duty of the appellant and his counsel upon the trial of the cause to set forth in his motion for a new trial "in detail and with particularity * * * the specific grounds or causes therefor" (V.A.M.S. § 547.030; Supreme Court Rule 27.20, V.A. M.R.), and failing in this regard, as the motion does in several instances, this court may not review those assignments of error. State v. Ronimous, Mo., 319 S.W.2d 565. The state claims that this rule applies to and prevents our review of the appellant's assignment with respect to the information and claim that the evidence is insufficient to support a conviction, particularly of burglary. It has been said and there may be some instances in which it is necessary to set forth in detail and with particularity objections to an information (State v. Green, Mo., 305 S.W.2d 863; State v. Daegele, Mo., 302 S.W.2d 20), but an information has always been a part of the record proper or "upon the record before them" (V.A.M.S. § 547.270; State v. Willard, 228 Mo. 328, 128 S.W. 749), and generally is for consideration in this court regardless of the sufficiency of the motion for a new trial. State v. Biven, Mo., 151 S. W.2d 1114, 1116. And the assignment that "the Court erred in denying Defendant's motion for a directed verdict of acquittal at the close of all the evidence" is the equivalent of a claim that "there was no substantial evidence to support the verdict" and presents for this court's review the sufficiency of the evidence to sustain the conviction. State v. Daegele, Mo., 302 S.W.2d loc. cit. 23; State v. Henderson, 356 Mo. 1072, 1076, 204 S.W.2d 774, 777; State v. Tharp, 334 Mo. 46, 51–52, 64 S.W.2d 249, 253.

By a motion to quash and in the motion for a new trial the objection to the amended information is that it failed to allege that the burglarized building was "owned, occupied or in possession of 'Ritter Hardware Company, Inc., a Corporation.'" The information charged that the defendant feloniously and burglariously broke into and entered "a certain building, to-wit, the store known as Ritter Hardware, belonging to Ritter Hardware Company, Inc., a corporation, located in Higginsville, Lafayette County, Missouri, by forcibly raising a locked and closed door of said building * * *." In connection with an information an "amendment" is a change or correction (State v. Varner, Mo., 329 S.W.2d 623, 626) and is permissible as long as no additional or different offense is charged and there is no prejudice to the defendant by reason of the amendment. V.A. M.S. § 545.290; Supreme Court Rules 24.02, 24.11. Here the proof showed beyond doubt the ownership of the building, it is not claimed or indicated how the appellant was prejudiced, the information was otherwise sufficient and it was not necessary to the validity of the information to allege "the legal status of the alleged owner of the burglarized structure (as being a corporation, a partnership or an individual)." State v. Zammar, Mo., 305 S.W.2d 441, 442; State v. Hedgpeth, 311 Mo. 452, 278 S.W. 740; State v. Lundry, 361 Mo. 156, 233 S.W.2d 734.

These briefly were the facts and circumstances in which the appellant was charged and convicted: About three o'clock on the morning of March 19, 1959, Mr. Ritter was called by a Higginsville night watchman to investigate a possible "break-in" of the "Ritter Hardware, Incorporated." Upon closing the store on the evening of March 18 Mr. Ritter checked and locked all doors and windows, particularly the overhead basement door. When he again investigated at three o'clock in the morning the overhead door was "slightly ajar" and unlocked and the pickup truck was missing from its place in the basement.

Further investigation revealed that shotguns, rifles, and a pistol were missing from the gun rack and several electric motors and drills were also missing. Mr. Ritter subsequently identified all of these articles and their value was $917.50 and the truck was found on the outskirts of Higginsville. About 1:40 in the morning a "rookie" Kansas City policeman saw a 1948 Chevrolet coach automobile with a Nevada license run a stop light at 18th and Charlotte Streets and, after calling for another patrolman, "put the red light and siren on" his police car and stopped the Chevrolet. The Chevrolet belonged to the appellant Mallory and he was driving it and in the seat beside him was Eddie Gurley. The patrolman informed Mallory that he was under arrest for "running a red light" and asked to see his driver's license. As the patrolman looked at the California driver's license he also looked through the rear window of the Chevrolet and saw several rifles and guns partially covered with blankets and clothes. The rear end of the Chevrolet sagged and the two officers asked him to unlock the trunk. He first said "I haven't got any key" but finally "reached down and opened it up, and in the trunk of the car was this merchandise, with electric motors and drills, some of them in boxes, some of them weren't in boxes." In these circumstances there was no unreasonable search and seizure and upon their subsequent identification by Mr. Ritter and the police they were of course admissible in evidence. State v. Hawkins, 362 Mo. 152, 159, 240 S.W.2d 688, 692; State v. Reagan, Mo., 328 S.W.2d 26, 28–29; State v. Campbell, Mo., 262 S.W.2d 5, 9. This evidence and other circumstances to be detailed support the conviction of grand larceny or "stealing" (State v. Nichols, Mo., 130 S.W.2d 485; State v. Gale, Mo., 322 S.W.2d 852, 855) and the meritorious question is whether there was also sufficient evidence to support the conviction of burglary.

Eddie Gurley first told the patrolman that Mallory had picked him up about an hour and a half before and he didn't know

his name, he said that he hadn't "done anything" and wanted to know why they were asking him questions. In a minute or so, however, Mallory said, "they'd been down to Clinton, Missouri, all day the previous day, the 18th." When asked where the guns and motors came from, despite the markings on them, Mallory said "he obtained a distribution agency, he got them in California" and that he had a bill of sale which he was unable to produce but said, "I'll show it at the right time." Later Mallory told a detective that Gurley had nothing to do with the property found in the automobile, "that anything he had in his car belonged to him, they were his idea, no one else knew what he had been doing." Eddie Gurley is Mallory's nephew and when the Sheriff of Lafayette County and Mr. Ritter arrived in Kansas City, Mallory told the sheriff that Eddie didn't "have a thing in the world" to do with the guns and motors that Eddie had "never been in our county down there," that he had been down to his grandmother's in Clinton. Mallory claimed to the sheriff that "another man" came down with him and they picked out a place to change the merchandise off the truck and "the man" was to give him $150 "just to haul that merchandise up to Kansas City." Mallory said that he picked Eddie up at the intersection on the road to Clinton, that he (Mallory) knew the stuff was stolen, "he was hauling it," but Eddie didn't. Mallory told another deputy sheriff that he was in Higginsville but went to a picture show and then picked Eddie up at the intersection. However, after Mallory got in the sheriff's automobile he informed the sheriff that a pistol was missing. The sheriff inquired where it was and Mallory told him that "it was in under the glove compartment of his car" and that it came out of the hardware store.

By the time Mallory was tried Eddie had been sentenced to two years in Algoa Reformatory for burglarizing the Ritter Hardware and he appeared and testified in his uncle's behalf. His story was that "two

of us," "Bob and Frank," he did not know their last names, "was supposed to do this job that was down in Higginsville"—they were to meet there. In order to get there Eddie told his uncle that there was to be "a boy's" party at Higginsville and that if he would take him he would pay for the gasoline. Uncle Gilbert took him to Higginsville, they arrived between 3:30 and 5 in the afternoon, not knowing of the burglary plans and they separated and Eddie did not see him again until he picked him up later that night at the "Y" outside the town. He says that the first time his uncle saw the guns and motors was when he opened the car trunk in Kansas City. Eddie says that he hid in the hardware basement and after closing time loaded the merchandise on the truck, drove out to the edge of town where the truck was found, transferred the merchandise to his uncle's automobile, picked up his uncle and they then drove on to Kansas City. Mallory, testifying in his own behalf, repeated the story of taking Eddie to Higginsville for the party, denied that he had ever been in Higginsville before and of course denied that he had burglarized the Ritter Hardware and furthermore denied any knowledge of the burglary.

All of the evidence, his initial claim of ownership or of "distribution agency," his original protestation that Eddie had nothing to do with the guns and motors in his automobile, the conflicting stories as to their whereabouts, his recent possession of merchandise that could not have been obtained in any manner other than from the now admitted burglary of Ritter's Hardware, circumstantially established Mallory's guilt and having been found substantially supports the charge of burglary in the second degree. State v. Enochs, Mo., 98 S.W.2d 689; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327; 12 C.J.S. Burglary §§ 50, 59, pp. 722, 735. Compare State v. Dashman, 153 Mo. 454, 55 S.W. 69.

■ Questions not required to be presented and preserved in a motion for a new trial have been examined and the tran-

script shows complete compliance with respect to all matters necessary to be considered by this court "upon the record before it." V.A.M.S. § 547.270; Supreme Court Rule 28.02. As indicated, the information appropriately charges the appellant with the offense of burglary in the second degree and grand larceny, the verdict is in proper form and responsive to the information, there was allocution and the sentence and judgment are responsive to the verdict. State v. Hayzlett, Mo., 265 S.W.2d 321, 324–325. Since no error is found upon the transcript the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.