**STATE of Missouri, Respondent,**

v.

**Alvin Holt EDMONDS, Appellant.**

No. 48395.

Supreme Court of Missouri,

Division No. 2.

June 12, 1961.

Thomas F. Eagleton, Atty. Gen., Dale Reesman, Sp. Asst. Atty. Gen., for respondent.

Bruce Nangle, St. Louis, for appellant.

BARRETT, Commissioner.

A jury found Alvin Holt Edmonds guilty of "burglary in the second degree and stealing." He was charged in one count with both offenses, there was an allegation and proof of prior felony convictions, and the court in pronouncing sentence fixed his punishment at five years' imprisonment for each offense "to run consecutively"—a total of ten years' imprisonment. Laws Mo.1959, H.B. 260, V.A.M.S. § 560.110.

In three of his assignments in his motion for a new trial the appellant challenges the amendment and sufficiency of the information. At the outset the court is confronted with the state's claim that these assignments in his motion are lacking in detail and particularity (Sup.Ct. Rule 27.20, V.A.M.R.; V.A.M.S. § 547.030) and that therefore the appellant has "saved nothing for review." The same contention is made against four assignments directed to or having to do with the appellant's claim that the evidence is not "sufficient to allow the State to take said cause to the jury." These matters are again briefly mentioned because there is a misconception as to the essential purpose and applicability of the statute and the rule. There are a few cases in which the court has inadvertently applied the rule or the statute to assignments relating to informations, and there may be some instances in which it is necessary to assign in detail objections to an information. But an information has always been a part of the record proper or "upon the record" before the court (V.A.M.S. § 547.270), and generally the sufficiency of the information is open for the court's consideration regardless of the particularity of the motion for a new trial. State v. Biven, Mo., 151 S.W.2d 1114, 1116; State v. Mallory, Mo., 336 S.W. 2d 383, 384. So also as to the sufficiency of the evidence to sustain the conviction, an assignment that the verdict is against the "weight of the evidence" preserves nothing for review because, as a general rule, the appellate court is not concerned with the weight of the evidence. But when a series of assignments in the totality of their effect or specifically challenge the substantiality of the evidence, the sufficiency of the evidence to sustain the verdict, and conviction is reviewable in this court. State v. Mallory, supra; State v. Washington, Mo., 335 S.W.2d 23; State v. Daegele, Mo., 302 S. W.2d 20, 23; State v. Henderson, 356 Mo. 1072, 1076, 204 S.W.2d 774, 777.

After alleging his prior convictions, the information here charges that on November 29, 1959, in the City of St. Louis,

Edmonds "feloniously and burglariously, forcibly did break and enter (Garner's Market), with felonious intent then and there, and thereby feloniously and burglariously to steal, take and carry away the goods, wares, merchandise or other valuable things, or personal property, in the said store, shop and building then and there kept and deposited, and groceries and sundries of the total value of two hundred fifty-one dollars and sixty-three cents; cigarettes of the value of two hundred twenty-six dollars and forty-eight cents; all of the total combined value of four hundred seventy-eight dollars and eleven cents; of the goods, wares, merchandise or other valuable things or personal property, of the said Melvis Garner, doing business as Garner's Market * * * then and there permanently to deprive the owner of the use thereof and to convert the same to his own use * * *." This language, admittedly, is so redundant and tautological as to be almost unintelligible; nevertheless, in one count it charges the offenses of burglary in the second degree, breaking into a building in which goods, wares and merchandise are kept (V.A.M.S. § 560.070) and "stealing," appropriating or exercising dominion over the property of another (Laws Mo.1955, p. 507; V.A.M.S. § 560.156). State v. Zammar, Mo., 305 S.W.2d 441; State v. Robinson, Mo., 325 S.W.2d 465. Thus the information "alleges the essential facts constituting the offense," the appellant did not file a motion for a bill of particulars because of its unintelligibility and therefore it must be assumed that he was sufficiently informed of the details "to prepare his defense." Sup. Ct. Rule 24.03.

■ As noted, the information alleged the theft of merchandise of the value of $478.11, but upon the trial of the case the proof was that two items stolen in the course of the burglary were 14 cases of coffee and 2 cases of chili of the inventoried value of "around $350.00" and 228 or 238 cartons of cigarettes of the value of $400.00 or more." After this proof the state was permitted to amend the information and charge the theft of "$350.00 sundry groceries and $400.00 of cigarettes." An "amendment" is a change or correction and "as to all matters of form and variance" (V.A.M.S. § 545.290) may, in the court's discretion, be made "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Sup. Ct. Rule 24.02. The appellant's claim is that the proof did not conform to the pleading, that the information was "so vague and confusing" that it did not fully inform him of the offense and did not charge a crime under the laws of Missouri. For the reasons indicated these objections are without validity and there is no demonstration in his assignments that substantial rights were prejudiced by the amendment. State v. Mallory, supra; State v. Carson, Mo., 286 S.W.2d 750.

■ The facts, briefly, as the jury could find them were that Garner's Tom Boy Market is located at 1909 East Grand Avenue. On November 28, 1959, an employee closed the store, locked and bolted the front and rear doors. When the store was opened on November 30 it was discovered that the back door had been pried open, there were cleat-soled shoe tracks in the sawdust around the meat counter and cases of coffee and chili and cartons of cigarettes were missing. There were also some blankets and other items missing and leaning against the fence around the rear parking lot there was a spare tire and wheel from an automobile. Joseph Velders, who was in the army when the case was tried, had lived in the neighborhood for 17 or 18 years and on November 28, 1959, lived at 1923a East Grand Avenue. During the day Joe worked at American Fixtures and at night worked in a roller skating rink. On November 28 he left the roller skating rink about 10:30, took some friends home and about 12:45 a. m. drove on to the enclosed lot back of Garner's Market and parked his car. As he drove into the lot he saw "two fellows" sitting in a black 1949 or 1950 Mercury in front of the store. There were two cars and a

truck on the parking lot and Joe parked his automobile against the fence, 50 or 60 feet from the rear entrance of the store. As he "shut my lights off," one of the automobiles drove out of the lot and the Mercury drove in with its lights off. The two men in the Mercury backed the automobile up to the rear entrance of the store and Joe "just sat down in the seat so they couldn't see me." There was a light over the rear door of the store and Joe says that the driver of the Mercury got out, raised the trunk and placed a spare tire against the fence and got an object out of the trunk, "looked like a crowbar." This man, identified by Joe as the defendant Edmonds, reached up and unscrewed the light bulb and "started banging on the door." Joe described the defendant and his clothes. He saw the defendant enter the store, make 12 or 15 trips in and out carrying boxes which "this other fellow" stacked in the automobile. As the two men drove away in the Mercury automobile Joe noticed that the right rear hub cap was missing and he wrote down the license number—Y83–495. On Sunday morning, November 29, Joe called a policeman, told him what he had seen, but said he wasn't positive that it was a burglary and "just wait and see if I hear any rumors." On Monday morning Joe went to Garner's store, told them what he had seen and gave police officers the license number he had written down. In addition to identifying Edmonds he identified the automobile. Investigation revealed that the license had been issued to Edmonds and that he owned the 1950 Mercury. From this information the police officers learned that Edmonds lived in the rear of 1306 Montgomery and on Monday parked at 14th and Montgomery streets and as he drove away in his 1950 Mercury automobile arrested him. In the trunk of his automobile there was a sledge hammer and a crowbar. The officers took Edmonds to 1306 Montgomery and in the presence of his mother and sister found a blue blanket, a pair of cleated rubber-soled shoes, a cap and other articles belonging to him. There

are other circumstances but this proof is certainly substantial evidence of the defendant's guilt of burglary in the second degree and stealing. State v. Zammar, supra; State v. Robinson, supra. In some respects Velders' conduct may appear to be unusual, but his testimony was not "so contradictory and contrary to physical facts that it is not worthy of belief." His testimony was not discredited in any respect, and if contrary inferences were permissible the credibility of his testimony was resolved by the jury. State v. Peterson, Mo., 305 S.W.2d 695. Whether Velders timely reported what he had seen may bear on the credibility of his testimony, but in the absence of a specific request, the court was not bound to instruct the jury "of the gravity of the omission of the State's Chief Witness, Velders, in that he failed to report a crime at or near the time of its commission." State v. Reich, 293 Mo. 415, 239 S.W. 835; State v. Koch, 322 Mo. 106, 16 S.W.2d 205.

 It is urged, in submitting the defendant's guilt or innocence, that the court erred in giving instructions 1 to 9, particularly those dealing with the offenses charged in that they were unfairly "repetitious comments on the charges." As indicated, the two offenses were properly charged in one count (V.A.M.S. § 560.110), and while unfairly repetitious instructions should not be given, if they correctly declare the law (and it is not claimed here that they do not) it would not necessarily follow "that they would thereby tend to prejudice the minds of the jury against the accused." State v. Murray, Mo., 193 S.W. 830, 832. In the submission of multiple offenses the jury must be informed as to the possible alternative verdicts, "It was proper, therefore, that all these contingencies should be contemplated by distinctive instructions." State v. Tucker, 333 Mo. 171, 179, 62 S.W.2d 453, 456. It is not manifest upon this record that the instructions were prejudicially erroneous for the reasons assigned.

In connection with the merits of the cause there are seven assignments of error directed to the admission in evidence of exhibits, a carton of cigarettes, the defendant's shoes and hat, and a blue blanket. It is objected that these items were inadmissible in evidence because "no foundation or no probative value was shown to attach to said goods," that there was no showing that 1306 Montgomery was the defendant's home or that the exhibits were owned or were in the defendant's possession. And in connection with these charges of error there is an assignment that the court erred in failing to sustain the defendant's motion to suppress evidence because the testimony of the police officers that he invited them to search his person, his automobile and his home "is incredible, unrealistic and wholly contrary to the experiences of men." Some of these assignments in the motion for a new trial are lacking in the required detailed particularity (Sup.Ct. Rule 27.20; V.A.M.S. § 547.030), but a more fundamental defect is that a detailed examination of the record reveals that in every instance when these and other items were identified there was no objection whatever when they were introduced in evidence and consequently there was no basis or foundation for an assignment of error in the motion for a new trial. State v. Leonard, Mo., 182 S.W.2d 548, 551; State v. Hinojosa, Mo., 242 S.W.2d 1, 8; State v. Smith, Mo., 261 S.W.2d 50, 56. Since there were no objections to these items and they were all connected with the defendant and the offense they were as a matter of course admissible in evidence. State v. Washington, supra. There was not the slightest contradiction of the police officers' testimony that the defendant "invited" them to search his automobile and the apartment, 1306 Montgomery, where certain of the items were found and so the record does not permit of even a suspicion that there was an illegal search and seizure. As stated, there was no objection to the introduction of the articles, the record shows that there was a motion to suppress evidence and that it was overruled but it does not appear what if any evidence was offered on the motion and therefore it must be assumed that the court conducted an inquiry or that the defendant offered no evidence in support of his motion. State v. Hepperman, 349 Mo. 681, 698, 162 S.W.2d 878, 887; State v. Lord, Mo., 286 S.W.2d 737.

It is urged that the court erred in permitting witness Harris, manager of Garner's store, to testify that he had talked to the butchers employed in the store and that none of them wore cleat-type soled shoes. It is said that this testimony implied that "other goods other than those testified to, namely, meats" had been stolen when there was no proof or claim of such theft. It is urged that the court erred in permitting Rundquist, the manager of the St. Louis office of the State License Department, to testify "since said witness was not introduced as a witness to testify in this cause." It is not known just what this latter assignment means, it is lacking in detailed particularity (Sup.Ct. Rule 27.20), but the fact is that when he testified he answered that he had brought the records as to state license Y83–495 in response to a subpoena duces tecum (Sup.Ct. Rule 25.-19), consequently there is no basis in fact for the assignment of error. As to Harris and the butchers' shoes, there was not only no objection to his testimony, the information was elicited on cross-examination: "Q. * * * Now, did you ask the three butchers that worked there Saturday night whether any of them had shoes comparable to the type that made the impression? A. Right. Q. And what did they say? A. No."

In connection with the evidence in general it is objected that the court erred in finding the prior felony convictions because there was no showing "as to the validity of the records, nor any testimony concerning as to what at all constituted a normal course of business in the areas where said records were kept." This assignment is lacking in specific detail (Sup.

Ct. Rule 27.20), but from the rather elaborate objections during the examination of a deputy circuit clerk it appears that the objections were directed to the point that the clerk's records of Edmonds' convictions did not meet the requirements of the Uniform Business Records As Evidence Act (V.A.M.S. § 490.680) and that the certified penitentiary records were not competent. These objections do not in point of fact attack the authentication of the records of prior convictions (State v. Peterson, Mo., 305 S.W.2d 695), the clerk's records were of "judicial proceedings" and properly attested were admissible. V.A.M.S. § 490.-130. These and the other official records offered in evidence were required to be kept before the adoption of the business records act and were admissible in evidence even though they failed to meet the requirements of that law. State v. Washington, supra.

■ In connection with the trial of the case it is urged that the court erred at the outset in failing to sustain the appellant's objection to the statements and gestures of the state's attorney in his opening statement. It is said that the state's attorney did not outline his case to the jury but made an "uncontroverted argument at this critical point of the trial." The assistant prosecuting attorney did tell the jury in considerable detail just what the state's proof would be and he was outlining what witness Velders would say. The prosecutor had said, "He will tell you that the man who got out of that 1950 Mercury is seated here in the courtroom and is Alvin Holt Edmonds. Now, he watched Edmonds unscrew the light and after—." It was at this point that defense counsel said to the court that the purpose of an opening statement is to inform the jury what the state is going to prove and he objected: "Any dramatics and pointing to the defendant and arguing his case I think is certainly out of line and counsel should be reprimanded and confined to stating what the evidence will show and leave the argument to some other time and I think he is coming

very closely to arguing his case to the jury and I object to it." The court overruled the objection and stated that it could not be expected that the circuit attorney would give his opening statement in a monotone. The court added, "He can use dramatics if he chooses." The prosecutor continued with his detailed statement and there was no other objection or request for action on the part of the court. Defense counsel's objection is probably an accurate statement of the general rule and purpose of an opening statement. 23 C.J.S. Criminal Law § 1085, p. 526. It should be noted, however, that the prosecutor's outline was a very accurate statement of what the state's evidence would show, there were no misstatements and the state did offer evidence in proof of the statement. State v. Emrich, Mo., 250 S.W.2d 718, 723. Compare: State v. Cook, Mo., 282 S.W.2d 533. It may not be precisely accurate to say without qualification that dramatics may be employed in an opening statement. However, the trial court does have some discretion and it is not manifest in these circumstances that the state's attorney so overstepped the bounds of propriety that this court should grant a new trial. State v. Posey, 347 Mo. 1088, 1099, 152 S.W.2d 34, 40.

■ There are two other assignments in connection with the trial, one is that the court erred in permitting "all of the exhibits" to be taken to the jury room after the jury had been deliberating for about two hours. It is said that this matter was particularly prejudicial because of the "numerical disparity" in his and the state's exhibits. The matter arose in this manner: The defendant's exhibits consisted of two photographs of the rear of the store, exhibits A and B. They were designed to show, principally, that there was no light over the rear door. While the jury was deliberating the sheriff informed the court that the jury had asked if they could have the two photographs of the store. In the course of a colloquy defense counsel said that he thought the jury should have the

exhibits they requested. The prosecuting attorney objected to "sending down piece-meal exhibits." The court stated that in view of the prosecutor's willingness that the jury might have all the exhibits except those relating to prior convictions, he would "send all the exhibits down if they want." Defense counsel excepted to the court's ruling and in compliance with the jury's request all the exhibits were "furnished the jurors for their inspection in the jury room." In these circumstances again it is not manifest that the court prejudicially erred in permitting the jury to have all of the exhibits. 23 C.J.S. Criminal Law § 1369e, p. 1037. Compare, however, State v. Damon, 350 Mo. 949, 169 S.W.2d 382, in which the court did not exercise its discretion.

 The other and final assignment is that the court erred during the closing arguments in that the court unnecessarily commented on the testimony of witness Velders. It is said that the court's statement was an unpermitted oral comment on the evidence. Sup.Ct. Rule 26.09; V.A.M.S. § 546.380. The state's attorney had said that Velders had testified that the defendant's Mercury had "spotlights and fog lights." Defense counsel objected that there was no such testimony. The court said, "I think he did say that there was fog lights." There was no other or further objection and the prosecuting attorney continued with his argument. Incidentally, defense counsel spent considerable time in his argument pointing out to the jury how incredible it was that anyone would see and remember "spotlight and fog lights, a very unusual thing." Velders did testify that the automobile had "spotlights and fog lights," the fact was elicited on his cross-examination. The court's remark was addressed to counsel, not to the jury, the remark was accurate, the witness had so testified and it was a complete answer to defense counsel's objection and was not error. State v. Van Horn, Mo., 288 S.W.2d 919, 922; State v.

Moore, Mo., 303 S.W.2d 60; State v. Koch, supra.

 The appellant is not represented by counsel in this court and has not filed a brief, so in addition to considering the valid assignments in his motion for a new trial the court has also examined "the record before them" (V.A.M.S. § 547.270; Sup.Ct. Rule 28.02) and it is free from prejudicial error (State v. Mallory, supra) and, therefore, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.