**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**John William BUCKHANAN, Defendant-Appellant.**

**No. 51552.**

Supreme Court of Missouri, Division No. 1.

June 12, 1967.

Motion for Rehearing or to Transfer to Court en Banc Denied July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, James F. DeNeen, Special Asst. Atty. Gen., Joplin, for respondent.

Lewis, Rice, Tucker, Allen & Chubb, Chas. Claflin Allen and J. L. Pierson, Clayton, for defendant-appellant.

SEILER, Judge.

This appeal presents the question of whether there is sufficient evidence to support the conviction. By amended information based on Sec. 559.180, V.A.M.S., it was charged that defendant " * * * upon one John Matosich, did make an assault; * * and of his malice aforethought, did strike and beat with his hands; the said John Matosich, with the felonious intent the money of the said John Matosich * * * by force and violence and by putting * * * in fear of immediate injury to his person to rob, steal, take and carry away * * *" After a verdict of guilty by the jury and a finding by the court of prior convictions, the court sentenced defendant to fifteen years. Defendant was represented in the trial and on this appeal by appointed counsel.

The state's case in chief was that defendant entered Matosich's tavern in St. Louis about 8:15 p. m. and ordered a beer, taking a seat at the bar. Matosich was sitting at a table in the rear, reading a paper. The bartender was behind the bar. The porter, who had had several beers or drinks, was also sitting at the bar, three or four stools from defendant. Defendant made three or four trips to the rest room within 10 or 15 minutes. When defendant came out from his last trip, Matosich felt something in his back, some blunt object, something behind his back he could feel, although he did not see it or know what it was. At the same time defendant gave him a piece of paper or card, an inch and a half by three inches, bearing the words "Give me your money and nobody will be hurt." Matosich asked what he wanted, said he did not have any money and defendant took the card. About this time the bartender pointed a gun at defendant. Matosich said defendant put his left arm around his neck, lifted him, which Matosich did not resist, and when he lifted him defendant "went in my pockets" and took a key case. Defendant started to shield himself with Matosich and moved toward the front door. The bartender ran and locked the front door. About the time

defendant and Matosich passed the middle of the bar the porter seized from a nearby stove a container of scalding water and poured it on them. Both defendant and Matosich fell to the floor. Defendant was held there by the bartender and the porter. The porter testified he just happened to look toward the rear of the tavern and that is when defendant had Matosich by the neck, "like choking him," and was going to Matosich's right-hand pocket.

The bartender saw defendant slip the card under Matosich's thumb and then pick up the card and put it in his pocket. The bartender said he then went to the back and warned defendant not to bother Matosich, that Matosich was reading the paper. He then saw the defendant put his left hand under Matosich's chin with his right arm against Matosich's back and stand him up. The bartender then went behind the bar to get a gun loaded with blanks and locked the front door. He observed defendant go through both of Matosich's front pockets with his right hand. As the bartender turned around from locking the front door, defendant was using Matosich to guard himself, rushing him to the door, still holding him under the throat. That is when the bartender stepped in behind defendant and threw him to the floor. The bartender held defendant on the floor until the police arrived.

No one saw or found any weapon. The first officer to arrive promptly placed defendant under arrest and gave him "a thorough search to try to find a weapon," but found none.

Defendant was searched a second time by the second police officer just before being put in the police cruiser. Again no weapon was found, but this time Matosich's leather key case, containing from four to seven or eight keys was found in the right-hand coat pocket of defendant's sport jacket.

The piece of paper or small card was not found on defendant or on the premises after the arrest or the following morning when the porter cleaned up.

Defendant's account was that he went to the rest room only once, that he was sitting at the bar near the porter, who was "pretty well stewed"; that the porter took a newspaper away from him, whereupon defendant snatched it back and then the porter knocked him off the bar stool to the floor. About this time Matosich came up and defendant and Matosich were scuffling. This is when the defendant felt the hot water hit him and about the same time the bartender fired the pistol between defendant's legs and grabbed his feet. Defendant denied having or handing Matosich a card, having a weapon, putting his hand around Matosich's neck and his arm in the small of his back or trying to get Matosich to the doorway.

The state's main instruction followed the language of the information, authorizing a finding of guilty of assault with intent to rob, with malice, if on the evidence, beyond a reasonable doubt they found defendant did " * * * of his malice aforethought, in and upon one John Matosich make an assault, and * * * strike and beat with his hands the said John Matosich, with the felonious intent the money of the said John Matosich * * * by force and violence and by putting the said John Matosich in fear of immediate injury to his person, to rob, steal, take and carry away * * * "

At one point the jury returned, saying they were divided 7 to 5 and were "having problems determining what makes up this assault charge." The court gave another instruction, defining "assault" as "an intentional, unlawful offer of bodily injury to another by force, or force unlawfully directed toward person of another, under such circumstances as create well founded fear of imminent peril, coupled with apparent present ability to execute attempt, if not prevented"; "strike" as meaning "to deal or aim a blow or stroke, as with the fist, a weapon, or a hammer; make an attack"; and "beat" as meaning to "act with violence, to dash or fall with force, to strike anything as rain, wind and waves do; to strike repeatedly."

No instructions were given or requested with respect to any lesser included offenses, although on defendant's testimony there was a fight or scuffle in which he participated.

■ A violent and aggravated assault with the fists may constitute a crime under Sec. 559.180, State v. Gillespie (Mo.Sup.) 336 S.W.2d 677, 680. Here there was an actual physical touching of Matosich by defendant with a certain element of force involved, sufficient to constitute an assault and battery, but there was nothing of any aggravated or violent nature. Matosich admitted he was not injured. There was no evidence that defendant struck or beat Matosich with his hands and no substantial evidence that any weapon was used. The police made two searches and found no weapon. None of the three occupants of the taverns saw or found any weapon on defendant or on the premises. The evidence shows that defendant had no opportunity to dispose of or hide a weapon. In State v. Rongey (Mo.Sup.) 231 S.W. 609, the charge was assault with intent to kill with malice. The information and the instruction set forth defendant's having a large and heavy pair of shoes, with which he kicked and stamped the prosecuting witness about the head, face and body. The state's evidence was that defendant struck the complainant with his fist, knocked him down and kicked him once in the ribs. The case was reversed and remanded, the court saying at 231 S.W. l. c. 611:

"There was no evidence adduced at the trial which tended to show that defendant was wearing large and heavy shoes when the assault was made, nor is there any evidence in the record tending to show that appellant stamped and kicked Adami upon the head and face at all, much less with the alleged large and heavy shoes. The instruction is clearly erroneous, because it submitted issues to the jury without any evidence in the case upon which to base the same."

State v. Ruddle (Mo.Sup.) 270 S.W. 105, was a case of felonious assault, under Sec. 3262, R.S.1919 (now Sec. 559.180). The information charged use of hands, fists and other means of force likely to produce great bodily harm and death, with felonious intent to kill. The evidence showed use of the fists, with kicking, all in the nature of an old-fashioned "thrashing." There was no evidence as to the kind of shoes or that they were likely to produce death or great bodily harm. The medical evidence was that the victim had scratches, bruises and contusions on the face, head and chest, but no serious injuries. The court held that there was no evidence authorizing submission of felonious assault.

In State v. Johnson, 318 Mo. 596, 300 S.W. 702, defendant was charged with assault, maliciously, with hands, feet and fists, upon his wife, in manner likely to produce death or great bodily harm. The evidence was that he slapped her on the face and head, striking her with his fist and stamping her in the side, while defendant was sitting on the side of a boat and his wife lying in the bottom. The court reversed the conviction, saying there was no evidence as to the amount of force used, nor what portion of her side was stamped, or what kind of shoes defendant had on his feet, or that he had any shoes on. The court said the evidence fell far short of felonious assault.

In State v. Burkhart (Mo.App.) 34 S.W.2d 563, the court points out that the state having charged the assault to have been made by beating, which is equivalent to striking, the state would be required to show an assault by striking.

■ The state argues the charge of using the hands in the assault to strike and beat is merely surplusage. But as stated earlier the charge made is one of malicious assault by striking and beating, and the statute, Sec. 559.180, is directed against malicious assault with a deadly weapon or by any other means or force likely to produce death or great bodily harm, with intent to rob or to attempt to commit any felony.

The essence of the offense is an assault with a deadly weapon or by other means or force likely to produce death or great bodily harm. There is no evidence that defendant made a malicious and felonious assault and for this failure the cause must be reversed and remanded.

■ The state contends that defendant did not properly preserve in his motion for new trial the overruling of his motion for judgment of acquittal, but his assignment, "The Court erred in overruling the Motion for Judgment of Acquittal at the close of the State's case," is sufficient to preserve the question of the sufficiency of the evidence to sustain the conviction, State v. Mallory (Mo.Sup.) 336 S.W.2d 383, 384; State v. Meller (Mo.Sup.) 387 S.W.2d 515, 516.

The other points raised by defendant are not likely to occur again and there is no need to pass on them.

The judgment is reversed and the cause remanded.

All concur.