**STATE of Missouri, Respondent,**

v.

**David RAYNER, Appellant.**

**No. KCD 28187.**

Missouri Court of Appeals, Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer Denied April 15, 1977.

Application to Transfer Denied May 10, 1977.

 

According to the state's evidence, on the evening of February 20, 1975, three black males approached the front entrance of a Revco Drug Store situated at the corner of Independence Avenue and Prospect Avenue in Kansas City, Missouri. Upon reaching the front entrance, they looked both ways, ducked down, pulled something from inside their coats, and entered the store. Throughout the course of the trial, for reasons which hereinafter become apparent, the three men were referred to as the "first man", the "second man", and the "third man". The first man to enter the store hopped onto the top of a counter and announced a holdup. The first man then proceeded to the pharmacy area, struck a pharmacist who was on duty on the head, opened a safe and a narcotic cabinet, and began filling a pillowcase with money and narcotics. The second man went to an aisle near the center cash register and at gunpoint ordered two customers and an employee to lie on the floor. The third man placed himself beside a phone booth located near the front entrance of the store. All three men were carrying handguns. The customers in the store and the store employees were unable to identify defendant as being one of the three who participated in the robbery.

The police arrived while the "holdup" was in progress. The first officer to arrive at the scene, Sgt. Billy Reed, placed the third man (the man by the phone booth), later identified as Reginald Mack, in a "choke hold" position and subdued him. Sgt. Reed then observed the first man, later identified as Bruce Charles, duck behind a partition. Sgt. Reed fired several shots at the first man and another officer, Thomas Allen, shortly thereafter subdued and took him into custody. Someone then shouted that a third man was at the rear of the store, at which time Officers Thomas, Buck and Liebsch observed a black man run across the back of the store. Officers Buck and Liebsch then went to the back of the store where they observed defendant crawling on the floor. Upon being ordered to turn over, defendant grabbed Officer Buck's legs. Assisted by Officer Liebsch, Officer Buck

J. Arnot Hill, Hill & Gamm, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

Defendant was charged by information with the crime of robbery in the first degree by means of a dangerous and deadly weapon (Sec. 560.120, RSMo 1969, and Sec. 560.135, RSMo 1969), found guilty by a jury, and sentenced to twenty years imprisonment in the Missouri Department of Corrections.

Defendant assigns five points of error on appeal. The first four points so overlap one another that they lend themselves to being collectively paraphrased as one point (hereinafter referred to as point one), to-wit: the trial court committed reversible error in permitting state's witness Liebsch, a police officer, to testify, over objection of defendant as to extrajudicial statements inculpating defendant made by a purported co-conspirator after the latter was arrested, and in refusing to grant a mistrial premised thereon, notwithstanding the trial court's effort to cure the prejudicial effect of such testimony by belatedly withdrawing it from the jury's consideration. Defendant's remaining point is that the trial court erred in failing to give MAI-CR No. 1.08(b) "at recesses subsequent to the first recess and at adjournments".

Although defendant has not challenged the sufficiency of the evidence to support his conviction, a fairly detailed resume thereof cannot be avoided because of the direct bearing it has upon the composite point.

grabbed defendant and handcuffed him. Defendant was unarmed when he was seized. An abandoned handgun was found in an aisle in the store near the "toy" department.

Defendant took the stand and testified as follows in his own behalf. He went to the Revco Drug Store to purchase some items. Upon entering the store he was ordered by one of the participants in the robbery then in progress to walk directly to the back of the store and lie down on the floor. Defendant complied with the order. Shortly thereafter he heard the shots that were fired, then some policemen came to the rear of the store, physically accosted him, and placed him in handcuffs. Defendant denied any and all participation or involvement in the robbery that occurred and denied that he owned or was carrying a handgun when he entered or while in the store.

By way of placing defendant's first point in proper perspective, it is appropriate to quote the following testimony and procedural events which occurred during the direct examination of state's witness Liebsch:

"Q [Mr. Humphrey, Assistant Prosecuting Attorney]: Did you interview this defendant, or any other of the defendants, following this robbery?

A Yes, sir, I interviewed a Reginald Mack.

Q And when did that take place?

A I transported him to police headquarters in my police car, and upon arrival at headquarters we interviewed him.

Q And who is 'we'?

A Myself and Officer Buck.

Q Before the interview did you advise him of his rights?

A Yes, sir, he was advised of his rights under the *Miranda* warning.

Q And when you say you advised him of his rights under the *Miranda* warning, what does that mean, what—

MR. HANDLEY [Defense Counsel]: Excuse me. Will you come up here, Mr. Humphrey?

(Counsel approached the bench and the following proceedings were had:)

MR. HANDLEY: Your Honor, I would like to know the purpose of this question. I know of no admissions or confession by Mr. Mack or anyone else, and even if there were admissions, I believe under the law it's clear that they are inadmissible as being a violation of this defendant's right to confrontation. I would like to know where this examination is going.

MR. HUMPHREY: Well, it's the admission, a copy of which you admitted at the last trial, that Reginald Mack told this police officer that the three of them had come together—I think it's 39th and Brooklyn, that they had bought the guns on the street and all three of them were armed.

THE COURT: That is admissible.

MR. HUMPHREY: I think it's admissible because it's an admission by one co-conspirator, and whatever he says is an admission against himself and these other codefendants.

MR. HANDLEY: Your Honor, I object at this point to any testimony concerning a statement by a codefendant in this case. It's a violation of this defendant's right to confront under the Constitution, and I object to it.

THE COURT: The objection is overruled.

(The proceedings returned to open court.)

Q [Mr. Humphrey]: What do we mean when we say you advised him of his rights?

A That he has a right to remain silent, anything he says can and will be used against him in a court of law, he has a right to an attorney while being questioned; if he can't afford an attorney one will be appointed for him by the court.

Q And did he say he understood those rights?

A Yes, he did.

Q And after you had given him his rights under the *Miranda* decision, what did he say, if anything?

A   I asked him how many of the three suspects were armed, and he said all of them were.

Q   Did he say anything else?

A   Yes. I asked him where he got the gun, and he said he got it at 39th and Woodland approximately two days prior to the holdup. He paid $20.00 for it, from an unknown person.

Q   All right. What else did he say?

A   He stated he did not know what kind of guns the other ones had, but he knew they had guns.

Q   Did he say from what point they started?

A   They got on a bus at 39th and Woodland, and rode the bus to Independence and Prospect and got off the bus.

Q   Did he say how many of them there were?

A   All three of them.

MR. HANDLEY: Excuse me.

(Counsel approached the bench and the following proceedings were had:)

MR. HANDLEY: Your Honor, at this point I renew my objection to this testimony concerning the statement of a codefendant. I believe it's inadmissible and I believe it violates the Constitution clause, and I move for a mistrial.

THE COURT: That is overruled."

That portion of Officer Liebsch's testimony just mentioned was permitted to stand during the course of the testimony of two more witnesses called by the state and during a noon recess. When the trial resumed following the noon recess, the assistant prosecuting attorney advised the trial court that he had "done some research, including the case of State v. Newell, Mo., 462 S.W.2d 794, and the law seems to be that you can introduce statements of co-conspirators before and during the commission of a crime but not subsequent thereto." The assistant prosecuting attorney further advised the trial court, "for that reason I think that the jury should be instructed to disregard the testimony of Officer Larry Liebsch as it pertains to the admissions that he got from

Reginald Mack." Upon being so advised, the trial court concluded that it had erred in permitting Officer Liebsch to testify as to extrajudicial statements made by Reginald Mack inculpating defendant. At this point defense counsel again requested the trial court to declare a mistrial, but again the trial court refused to do so. Instead, the trial court orally instructed the jury as follows: "Ladies and gentlemen of the jury, you are instructed to disregard the testimony of Officer Liebsch insofar as it pertained to statements made to him by Reginald Mack." Thereupon the state rested its case.

█   The following principle, beyond any semblance of doubt or peradventure, prevails in this state: "[I]f the declaration of a co-conspirator or co-actor sought to be shown in evidence is not in furtherance of the object of the unlawful combination, or if it was made prior to the formation thereof, or after the consummation of the purpose thereof, . . . such declaration is hearsay . . . and not binding upon the co-conspirator or co-actor on trial. . . [a]fter the common enterprise is ended, whether by accomplishment or abandonment, no one of the conspirators or joint actors is permitted by any subsequent act or declaration of his own to affect the others." State v. Chernick, 278 S.W.2d 741, 748 (Mo.1955); See also: State v. Cross, 357 S.W.2d 125 (Mo.1962); and State v. Hill, 352 Mo. 895, 179 S.W.2d 712 (1944). The admission of such hearsay evidence, over objection, deprives an accused of his constitutional right of confrontation and attendant right of cross-examination, thereby infusing the error attached with prejudice of constitutional proportions. U.S.Const. Amend VI; Mo.Const. Art. I, Sect. 18(a) (1945); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); State v. Newell, 462 S.W.2d 794 (Mo.1971); and State v. Chernick, 280 S.W.2d 56 (Mo.1955).

█   As the testimony of Officer Liebsch pertaining to statements made to him by Reginald Mack was clearly inadmissible, the only question that remains is whether the trial court's instruction to the jury to disregard it was a sufficient anti-

dote. The answer to this question involves an area of law seldom touched upon in this state. Nevertheless, two cases in particular, *State v. Burchett*, 302 S.W.2d 9 (Mo. 1957) and *State v. Benson*, 346 Mo. 497, 142 S.W.2d 52 (1940), met the question head on. In *Burchett*, l.c. 302 S.W.2d 15, the court held that "[w]here the improper evidence is so impressive that the appellate court is of the opinion that its effect was not removed by the remarks of the trial court, a new trial will be granted." In *Benson*, l.c. 142 S.W.2d 55, the court held: "Where incompetent evidence is admitted of a character highly prejudicial to the rights of the defendant, the error is generally not cured by a withdrawal instruction. . . . We are of the opinion that the evidence was of such a character that we cannot say as a matter of law that the withdrawal instruction cured the error." Construed together, *Burchett* and *Benson* appear to compositely hold that if the character of inadmissible evidence is so "highly prejudicial" or "impressive" that an appellate court cannot say as a matter of law that a withdrawal instruction cured it, then a new trial is the only panacea. Application of the amalgamative principle gleaned from *Burchett* and *Benson* in a given case necessarily demands close scrutiny of the circumstances involved. It will be recalled that neither the customers nor employees of the Revco Store could identify defendant as one of the three men who perpetrated the robbery. Although the extrajudicial statements of Reginald Mack alluded to in Officer Liebsch's testimony did not mention defendant by name, his complicity was clearly implied by their tenor. Three suspects were placed under arrest at the Revco Drug Store, defendant being one of the three. Officer Liebsch testified that his postarrest interrogation of Reginald Mack led off with the latter being asked, ". . . how many of the suspects were armed . . .". From the way the interrogation of Reginald Mack was phrased, it defies credulity to believe that the jury failed to perceive that Reginald Mack implicated defendant as a member of the trio who committed the robbery because he went on to relate that all three

were armed and together took a bus from 39th and Woodland to Independence and Prospect, the scene of the robbery. In presenting this testimony through the medium of Officer Liebsch, the state was obviously trying to drive home to the jury defendant's identity as one of the participants in the robbery. Without it, defendant's identity rested upon circumstantial evidence. Coupled with defendant's denial under oath that he participated in the robbery, the "prejudicial" or "impressive" nature of the complained of testimony of Officer Liebsch becomes self-evident. The prejudice which attaches to inadmissible evidence of this character is an intangible which cannot be calculated into degrees. For this reason, confusion rather than clarity results when an attempt is made to characterize such prejudice as minimal, moderate, or maximum in nature. Necessarily, each case involves a judgment decision at the appellate level which turns on the totality of the circumstances involved.

Concededly, the composite principle derived from *State v. Burchett, supra*, and *State v. Benson, supra*, may appear at first blush to be at war with the well established principle that the declaration of a mistrial necessarily rests largely in the discretion of the trial court and its exercise of discretion is entitled to great deference on appeal. However, a mechanical application of this latter principle at the appellate level was never contemplated. Otherwise, seeking appellate review of discretionary rulings by a trial court would become nothing more than exercises in futility.

This court is constrained to hold that the testimony of Officer Liebsch in question was "prejudicial" or "impressive" because it had a direct bearing upon defendant's identity as one of the perpetrators of the robbery, a principal contested issue in the case. For this reason alone, the initial error in admitting the referred to testimony was not rectified by its subsequent withdrawal from the jury's consideration. Especially so, as the entire incident was further compounded by the fact that considerable time elapsed before any attempt was made to

expunge the inadmissible evidence from the minds of the jurors. In view of this temporal aspect of the problem, it is difficult to perceive that the inadmissible evidence was not indelibly planted in the jurors' minds. Parenthetically, how do you unring a bell? Additionally, the constitutionally impermissible nature of the evidence added a dimension to the problem which cannot be ignored. To hold that the trial court's admonition to the jury to disregard Officer Liebsch's testimony pertaining to what Reginald Mack told him was an adequate curative measure would be tantamount to holding that such was an adequate substitute for defendant's constitutional right of cross-examination. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

When inadmissible evidence saturates the state's case with prejudice it cannot always be purged by the simple expedient of instructing a jury to disregard it. The attendant delay and cost of a new trial vis-a-vis preservation of the integrity of a fair trial as contemplated by our system of justice never becomes on issue in a criminal case. Delay and cost occasioned by a new trial, however regrettable, must always yield to a fair trial.

Defendant's remaining point will not be addressed since it is unnecessary to do so to dispose of this appeal and it is unlikely that the matter posited therein will occur on retrial of the case.

Judgment reversed and cause remanded for a new trial.

All concur.