STATE of Missouri, Respondent,

v.

Jackie George LEDFORD, Appellant.

No. KCD 28699.

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer
Denied May 2, 1977.

Application to Transfer Denied
June 14, 1977.

William G. Mays, II, Public Defender, Columbia, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

PER CURIAM.

A conviction for robbery in the first degree (§§ 560.120, RSMo1969, and 560.135 RSMo Supp. 1975) and a sentence of twenty-five years imprisonment prompted defendant to appeal.

On appeal, three points are raised by defendant: (1) error in permitting a state's witness to testify as to matters he overheard during a conversation between defendant and a co-conspirator after the offense was consummated; (2) error in overruling defense counsel's objection to the state's reference to defendant as "Jackie-Boy" during closing argument; and (3) error in the jury's verdict in that it was not responsive to the information because the former referred to "Jackie George *Leford*" and the latter referred to "Jackie George Ledford".

A concise overview of the facts will presently suffice as the sufficiency of the evidence has not been challenged. Certain facts will be dealt with in greater particularity as needed when the various points are discussed.

At approximately 2:30 A.M. on November 6, 1975, a man entered the Columbia Best Western Inn, Columbia, Missouri, pointed a sawed-off shotgun at the night clerk and demanded the establishment's money. The night clerk readily complied and the motel was relieved of approximately $300.00. The man wielding the sawed-off shotgun then left the motel and got into a 1966 Mercury automobile which was waiting outside with a driver. The two men then fled in the automobile. A member of the Columbia, Missouri, Police Department who was on a "stakeout" nearby gave chase and the automobile occupied by the two men careened off the road and ended up in a ditch. The two men then abandoned their automobile and fled on foot. In the course of doing so, they discarded the money, the sawed-off shotgun, and some items of clothing in the vicinity of their automobile. Later that same morning, defendant was apprehended and charged with the robbery in question. During the trial, defendant was identified by the night clerk as the man who entered the motel and committed the robbery.

Relative to defendant's first point, while he was still at large he entered a house trailer in Columbia, Missouri, accompanied by another man identified as J____ M____. The house trailer was occupied by J____ M____'s sister. The occupant's brother-in-law, who was present at the time, overheard a conversation that ensued between defendant and J____ M____. The occupant's brother-in-law was called as a witness for the state and testified that during the course of the referred to conversation defendant stated that they "might give five to ten years to which J____ M____ replied that they "might get ten to twenty". Defense counsel lodged a timely objection to J____ M____'s reply comment and gave as grounds therefor that such was hearsay and violative of defendant's constitutional right of confrontation.

In approaching the first point, both the defendant and the state assume that J____ M____ was the driver of the getaway vehicle and, hence, a co-conspirator in the perpetration of the robbery. It is well established that an extrajudicial statement inculpating a conspirator who is charged with and standing trial for an offense, made by a co-conspirator after consummation of the offense and not in furtherance of the conspiracy, is hearsay and inadmissible against the conspirator who is standing trial. *State v. Cross,* 357 S.W.2d

125, 128 (Mo.1962); *State v. Chernick*, 278 S.W.2d 741, 748 (Mo.1955); and *State v. Hill*, 352 Mo. 895, 179 S.W.2d 712, 715–16 (1944). The principle stated above has been eroded by at least one of the exceptions among the labyrinth of exceptions pervading the field of hearsay evidence in general. An inculpatory extrajudicial statement made by a co-conspirator, although made after termination and not in furtherance of the conspiracy, may be admissible against a conspirator standing trial if made in the defendant-conspirator's presence and under circumstances indicating that the defendant-conspirator acquiesced therein; the defendant-conspirator's acquiescence may be implied by a failure on his part to deny the truth of such statement if it was one which would naturally call for a denial and he was offered an opportunity to do so. 22A C.J.S. Criminal Law § 768 (1961); and cases collected in the annotations in 80 A.L.R.1235, 1243–44 (1932) and 115 A.L.R. 1510, 1512–14 (1938). This exception is one of long-standing recognition in this state. *State v. Walker*, 98 Mo. 95, 9 S.W. 646, 650–51 (1888). It is rooted in the "tacit admission" doctrine,[1] likewise well established in this state. See *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. banc 1975), for a general explication of the "tacit admission" doctrine. Defendant's statement that they "might get five to ten years" and J‌____ M____'s reply that they "might get ten to twenty" have a common ring of culpability. Although the record in the instant case is silent with respect to whether defendant denied or was not afforded an opportunity to deny the statement made by J‌____ M____ during the course of their conversation, thereby precluding the notion that he passively acquiesced in it, it may reasonably be said that defendant actively acquiesced in it as evidenced by his own inculpatory extrajudicial statement of the same general tenor which immediately preceded and obviously occasioned J‌____ M____'s reply comment. A ratiocinative analysis of the underlying logic and rationale of the "tacit admission" doctrine permits the conclusion that it possesses sufficient elasticity to accommodate instances of active acquiescence as well as passive acquiescence, thereby justifying inclusion of J‌____ M____'s reply comment within its purview.

*Campbell v. United States*, 415 F.2d 356 (6th Cir. 1969) dispels defendant's constitutional argument. There the court held that the admission of certain inculpatory extrajudicial statements made by a co-conspirator did not violate appellant's Sixth Amendment right of confrontation since they "fell squarely within the confines of the narrow co-conspirator exception" to the hearsay rule. In so holding, the court relied on the following statement found in *Bruton v. United States*, 391 U.S. 123, 128, n.3, 88 S.Ct. 1620, 1623, 20 L.Ed.2d 476 (1968): "We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence . . . . There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." Defendant's first point is ruled adversely to him.

■ In his second point, defendant contends that he was deprived of a fair trial because the prosecutor during closing argument, over objection, referred to him as "Jackie-Boy". The epithet was used only once by the prosecutor who, immediately after defendant's objection to its use was overruled, stated to the jury that he meant no disrespect to defendant.

■ Whether or not remarks of counsel during closing argument are so improper as

---

1. The "tacit admission" doctrine has been held applicable in the following cases where a co-conspirator of a defendant-conspirator made an inculpatory extrajudicial statement in the defendant-conspirator's presence after the conspiracy had terminated. *U. S. v. Steel*, 458 F.2d 1164, 1166 (10th Cir. 1972); *U. S. v. Schroeder*, 433 F.2d 846, 850 (8th Cir. 1970); *Eaton v. State*, 280 Ala. 659, 197 So.2d 761, 763 (1967); and *Munson v. State*, 250 Ala. 94, 33 So.2d 463, 464 (1948).

to ascend to the level of prejudicial error is a matter resting largely within the trial court's discretion and an appellate court will not interfere unless the record shows an abuse of discretion. *State v. Rutledge,* 524 S.W.2d 449, 458 (Mo.App.1975); and *State v. Connell,* 523 S.W.2d 132, 137 (Mo. App.1975). In *State v. Wallace,* 504 S.W.2d 67, 72 (Mo.1973), it was held that the trial court did not abuse its discretion in overruling an objection to the prosecutor's reference to the defendant as a "young punk" during the course of closing argument. Flippant though the term of reference employed by the prosecutor in the instant case may have been, prejudicial it was not. Although this term of reference is not condoned, it cannot be said, upon the record, that the trial court abused its discretion in overruling defendant's objection. Accordingly, defendant's second point is ruled against him.

■ Defendant, in his third and final point, charges that the trial court erred in not granting him a new trial because the verdict of the jury was not responsive to the information by which he was charged and upon which he stood trial. In the information defendant's name appears as "Jackie George Ledford". The verdict returned by the jury read as follows:

"*VERDICT*

We, the jury, find the defendant, Jackie George Leford [sic], guilty of Robbery in the First Degree as submitted in Instruction No. 5.

We fix punishment at <u>twenty-five years</u>.

/s/ Charles Dysart
FOREMAN"

The verdict, as returned by the jury, was on one of three verdict forms prepared and submitted to the jury by the trial court. The other two verdict forms (one finding defendant not guilty and the other finding defendant guilty with the jury unable to agree upon punishment) prepared and submitted to the jury by the trial court correctly spelled defendant's surname. It is patently obvious that a typographical error was responsible for the discrepancy between the correct spelling of defendant's surname as it appeared in the information and its spelling as it appeared in the verdict returned by the jury. Moreover, the fact that defendant was referred to on repeated occasions through the course of the trial as "the defendant, Mr. Ledford", "Jackie Ledford", and "Jackie George Ledford" is of salient significance.[2]

■ The purpose of a verdict "may be defined as being, when properly drawn, a definite answer given by the jury to the court concerning the matter of fact submitted to them for their consideration and determination . . . [t]o meet these requisites it should, in general terms, respond to the charge made in the indictment or information . . . [p]ossessed of these requisites, it will be sufficient, when a judgment is properly rendered thereon, to bar another prosecution for the same offense." *State v. Stuart,* 316 Mo. 150, 289 S.W. 822, 824 (1926). In testing the verdict of a jury, the overriding objective is to ascertain the intent of the jury. If the jury's intent is clearly discernible, the verdict is good though it may be irregular in form. *State v. McCarthy,* 336 S.W.2d 411, 417 (Mo.1960); and *State v. Shumate,* 516 S.W.2d 297, 302 (Mo.App.1974). For example, in *State v. Stuart,* supra, 289 S.W. at 825, the court held that the designation of defendant as "defendant" in a verdict, without otherwise naming him, was proper and constituted a sufficient verdict.

In support of his position, defendant principally relies upon the case of *State v. McBride,* 19 Mo. 239 (1853), wherein the Supreme Court held that a verdict returned against "James McBride" should be set aside because it was "Joseph McBride" who had been indicted and who stood trial. The

---

**2.** The record also reveals that during allocution, formal entry of judgment and pronouncement of sentence, defendant was correctly described and referred to as "Jackie George Ledford".

facts in the instant case are clearly distinguishable from those in *State v. McBride,* supra. In *McBride,* the defendant (Joseph McBride) was jointly indicted and jointly tried for a riot which occurred in St. Louis County. In the instant case the defendant was separately informed against and separately tried. Unlike *McBride,* no possibility of confusion existed in the instant case as to whom the jury intended to convict. It also appears that the verdict returned in *McBride* found "James McBride" guilty absent any companion designation of him as a defendant. On the other hand, in the verdict returned by the jury in the instant case, although the letter "d" was omitted from defendant's surname, it was preceded by the companion designation "defendant". To hold, where as here the defendant was separately informed against and separately tried, that the verdict was not responsive to the information would require this court to unrealistically emphasize form over substance. Notwithstanding the slight misnomer seized upon by defendant, this court entertains no qualms in holding that the jury clearly intended to and did find defendant guilty of robbery in the first degree. Ergo, defendant's third and final point is not persuasive.

Defendant was ably represented on appeal and every potential avenue that might lead to error was fully explored. However, the absence of any error compels affirmance of the judgment.

Judgment affirmed.

All concur.