**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Gregory SYKES, Defendant-Appellant.**

No. 38964.

Missouri Court of Appeals,
St. Louis District,
Division One.

June 20, 1978.

Motion for Rehearing and/or Transfer Denied July 14, 1978.

Application to Transfer Denied Sept. 12, 1978.

Paul E. Corning, Jr., Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

Appellant Gregory Sykes appeals from a judgment entered in the circuit court of St. Louis County upon a jury verdict finding him guilty of two counts of robbery in the first degree by means of a dangerous and deadly weapon, §§ 560.120, 560.135, RSMo 1969. Appellant was sentenced to five (5) years imprisonment on Count I and five (5) years imprisonment on Count II, said terms to run consecutively. For reversal appellant argues that the trial court erred in (1) permitting Detective Sergeant Frank Harris to testify, over objection, that David Jones, appellant's co-actor, had confessed to the offense charged and implicated appellant and (2) permitting, over objection, the prosecutor to ask appellant how he became aware that he was a suspect in the robbery (the offense charged). For the reasons discussed below, we agree with appellant's analysis and accordingly reverse and remand for a new trial.

Appellant does not challenge the sufficiency of the evidence presented; therefore, only those facts necessary to the discussion of appellant's points shall be set forth in detail.

The evidence showed that on March 4, 1976, at about 8:20 a. m., a Quick Shop in the city of Creve Coeur, Missouri, was robbed by a lone gunman. Gerald Dillon, the manager of the Quick Shop and the only employee in the store at the time of the robbery, testified that a man came into the store, waited until the other customers left, approached the cash register with several items, and then pulled out a small gun. Dillon further testified that the gunman said, "Give me all your money," which Dillon did. During the robbery a young girl, about thirteen years old, and a delivery man from a potato chip company came into the store and were told by the gunman to lie down on the floor. They did so.

The gunman then told Dillon to get the money out of the store safe and put it in a paper bag. Dillon did so. Then the gunman told them to walk into the refrigerated cooler and stay there for awhile. The gunman returned about five minutes later to ask Dillon to get the money out of the store's other cash register. Dillon did so and afterwards went back into the walk-in cooler. The gunman picked up the money in the paper bag, the money from the cash register and the grocery items and then left.

Michael Crecelius, the delivery man from the potato chip company, testified to substantially the same facts. He added that the gunman asked him if he had any money and, after he answered he had $5.00, told him to take the money out of his wallet and put it on the counter. He did so.

Appellant testified that on the day of the robbery he was at home sleeping. He also testified that his mother was at work, and that his nephews and nieces were at school. He also stated that he knew where the Quick Shop was located but had never been there.

Appellant first argues the trial court erred in permitting Detective Sergeant Frank Harris to testify, over appellant's objection, that David Jones, allegedly appellant's co-actor, had confessed to the robbery and implicated appellant. Appellant urges that Detective Harris' testimony concerning these extrajudicial statements constituted inadmissible hearsay. Appellant argues that because David Jones, the declarant, did not testify, he was unable to cross-examine and was thereby denied his right to confrontation. U.S.Constitution Amend. VI; Mo.Const. Art. I, § 18(a) (1945).

Detective Harris was called by the prosecution to testify about appellant's alleged oral confession. The prosecutor began questioning Detective Harris about the circumstances of the confession: whether there had been any physical abuse or mental coercion, whether any promises had been made. Detective Harris answered there had been none. He then proceeded to relate the substance of the confession.

On cross-examination appellant's attorney asked Detective Harris:

"Q. You didn't happen to tell him at that time that you got a witness who will testify absolutely against

you, it would go easier for you if you talk now? Remember making that statement?

"A. I remember making half of that statement, but the last half I didn't make. But I can recall when I spoke to Mr. Sykes he had inquired what David Jones had said, and I told him David Jones—

"Q. You remember making the first half of that statement?

"A. Yes.

"Q. That you had a witness against him?

"A. Yes.

"Q. You didn't say that today, but that's what you testified to at that prior hearing that you told him you had a witness that would testify against him. You remember making that statement at that time?

"A. No, not at that time, I don't, no."

On redirect examination the prosecutor asked Detective Harris to state specifically what he said to appellant about a witness who would testify against appellant. Appellant's attorney made a general objection. The prosecutor argued that this subject matter had been opened up on cross-examination. The trial court overruled the objection. Detective Harris answered the question:

"A. Yes, sir, I do. As I recall, Mr. Sykes prefaced anything he was asking me with 'What did David say?' And I told him that David had confessed and implemented (sic) him and he was prepared to testify as to his involvement and to his involvement."

Detective Harris clarified his last sentence, stating that he meant that David Jones was ready to testify about his own involvement as well as appellant's. Appellant's attorney objected on the grounds that this testimony was "immaterial and irrelevant to this cause of action" and requested that the jury be instructed to disregard it. The trial court did not rule on the objection but declined to so instruct the jury.

■ We initially note that we review appellant's first point under the plain error rule because it has not been properly preserved for review, Rule 27.20(c), V.A.M.R. Appellant's attorney made only a general objection to Detective Harris' testimony on direct examination.

"It is universally held in Missouri that specific objections are required to evidence, arguments, or statements of counsel, and the objection must call the attention of the Court to the ground or reason for the objection. (Citations omitted.) Such an objection as 'we object' does not preserve any question for review. . . ." *State v. Lang,* 515 S.W.2d 507, 511 (Mo. 1974).

Furthermore, appellant's attorney's specific objection that the testimony was immaterial and irrelevant, made after Detective Harris had testified, is different from the hearsay objection now presented on appeal. The point raised upon appeal must be based upon the theory of the objection made at trial. *Id.;* see also *State v. Harper,* 553 S.W.2d 895, 897 (Mo.App.1977).

■ We also note that ". . . [t]he admission of such hearsay evidence, over objection, deprives an accused of his constitutional right of confrontation and attendant right of cross-examination, thereby infusing the error attached with prejudice of constitutional proportions. . . ." *State v. Rayner,* 549 S.W.2d 128, 131 (Mo. App.1977). Constitutional error, however, does not necessarily require notice under the plain error rule; in some cases even federal constitutional error may be considered harmless. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Howard,* 540 S.W.2d 86, 87 (Mo. banc 1976). We must ". . . 'review all the facts and circumstances in each case and determine on a case-to-case basis whether manifest injustice has resulted from the alleged error.'" 540 S.W.2d at 87. Our analysis will consider whether the admission of the alleged hearsay evidence constituted constitutional error and, if so, whether such error was harmless error.

Respondent first contends that Detective Harris' testimony was not used in an "objectionable hearsay sense." By this respondent apparently means that the testimony was used only to clarify what, if any, statements Detective Harris had made to appellant that may have prompted appellant's confession. According to respondent, Detective Harris' testimony disclosing David Jones' confession and implication of appellant was offered because ". . . the statements themselves formed necessary links in a chain of circumstantial evidence, . . ." *In re Thomasson's Estate,* 347 Mo. 748, 148 S.W.2d 757, 763 (1941), not to prove the fact therein asserted to be true, namely that David Jones had in fact confessed and implicated appellant. See *State v. Trotter,* 536 S.W.2d 877, 879 (Mo.App. 1976). Respondent also argues that the prosecutor had the right to rehabilitate Detective Harris' credibility by asking what specific statement had been made to appellant. Respondent finally argues that the cases prohibiting the use of co-conspirator's or co-actor's statements made after the conspiracy has ended are distinguishable from the present case. We disagree and, for the reasons discussed below, hold that the testimony of a police officer disclosing that a purported participant, in an extrajudicial statement made after the consummation of the offense, had confessed and implicated appellant in the offense was inadmissible hearsay and denied appellant the constitutional right to confrontation and the attendant right to cross-examination, and, in the circumstances of the present case, such error was plain error and could not as a matter of law be declared harmless beyond a reasonable doubt.

We note that there was no dispute about the *voluntariness* of the alleged confession. Appellant simply denied ever making such an inculpatory statement. Nor do we find that Detective Harris' credibility had been attacked on cross-examination and as such that it needed to be rehabilitated by fully relating that an alleged participant in the robbery had confessed and implicated appellant. From the record it does not appear that appellant's attorney challenged Detective Harris' statement that he had a witness who would testify against appellant. The disputed testimony, and thus the attack on Detective Harris' credibility, was related to whether he induced appellant to confess by inferring that it would go easier for him if he talked now.

More importantly, the police officer's testimony falls squarely within the rule prohibiting the use of a co-conspirator's or co-actor's statement made after the conspiracy has ended, as inadmissible hearsay. See *Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *State v. Newell,* 462 S.W.2d 794, 797 (Mo.1971); *State v. Chernick,* 278 S.W.2d 741, 748 (Mo. 1955) (assault); *State v. Chernick,* 280 S.W.2d 56, 59 (Mo.1955) (robbery); *State v. Rayner,* 549 S.W.2d 128, 131 (Mo.App.1977); *State v. Johnson,* 538 S.W.2d 73, 77 (Mo. App.1976); *cf. State v. Kirkland,* 471 S.W.2d 191, 193–4 (Mo.1971) (witness rather than co-conspirator or co-actor).

". . . [I]f the declaration of a co-conspirator or co-actor sought to be shown in evidence is not in furtherance of the object of the unlawful combination, or if it was made prior to the formation thereof, or after the consummation of the purpose thereof . . . such declaration is hearsay . . . and not binding upon the co-conspirator or co-actor on trial . . . (Citations omitted.) [a]fter the common enterprise is ended, whether by accomplishment or abandonment, no one of the conspirators or joint actors is permitted by any subsequent act or declaration of his own to affect the others. . . ." *State v. Chernick,* 278 S.W.2d 741, 748 (Mo.1955).

The admission of such hearsay evidence deprives an accused of the constitutional right of confrontation of the witnesses against him and the attendant right of cross-examination. *Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *State v. Rayner,* 549 S.W.2d 128, 131 (Mo.App.1977). As recognized in *Bruton,* the inherent unreliability of an accomplice's incriminating statement is compounded when such extrajudicial state-

ments are introduced by a third party and the declarant does not testify and cannot be cross-examined. 391 U.S. at 136, 88 S.Ct. 1620.

In the present case David Jones' declaration was made after the robbery was completed and not in furtherance of the robbery and does not fall within "[the confines of] any recognized exception to the hearsay rule." *Bruton v. United States*, 391 U.S. at 128, n.3, 88 S.Ct. at 1623; *see Campbell v. United States*, 415 F.2d 356 (6th Cir. 1969); *State v. Ledford*, 550 S.W.2d 871, 873 (Mo. App.1977) citing *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. banc 1975) (tacit admission rule). The declaration was made extrajudicially and introduced by a third party to show that appellant's alleged co-actor had confessed and implicated appellant in the robbery. Because David Jones did not testify, appellant had no opportunity to confront and cross-examine him and thereby test his credibility. For this reason, the trial court erred in admitting the testimony.

We also conclude that this error was not harmless error and therefore reverse and remand for a new trial. The theory of the prosecution at trial was that appellant was the driver of the car during the robbery. None of the witnesses testified about a second man and, in fact, identified only David Jones as the robber. In fact, aside from the hearsay testimony, the only other evidence was appellant's alleged oral confession, which he denied making. There was no other substantial evidence which implicated appellant in the robbery. On this basis we distinguish *State v. Edwards*, 435 S.W.2d 1 (Mo.1968) (other substantial evidence already obtained from other witnesses) and *State v. Harris*, 535 S.W.2d 145 (Mo.App.1976) (other substantial evidence, hearsay testimony was not heavily relied upon to identify accused.) *Cf. State v. Stevens*, 467 S.W.2d 10 (Mo.) *cert. den.*, 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971) (no indication that hearsay declarant was a co-conspirator; no statement of declarant implicated the accused); Annot., 50 A.L. R.3d 96. Under the circumstances of the present case we cannot as a matter of law declare the admission of this hearsay testimony, which was highly prejudicial and constitutionally impermissible, was harmless error.

In view of our disposition of the first point raised by appellant, we will not review the second point. Accordingly, judgment is reversed and remanded for a new trial.

CLEMENS, P. J., concurs.

SMITH, J., dissents in separate dissenting opinion.

SMITH, Judge, dissenting.

I respectfully dissent. I am unable to conclude that the trial court committed error, much less plain error, in allowing the testimony of Harris about the statement which he, Harris, made to defendant.

I do not believe the testimony was hearsay. When an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply. Such a statement may be admitted if it is relevant. *In re Thomasson's Estate*, 347 Mo. 748, 148 S.W.2d 757 (1941) [10]; *Bond v. Wabash Railroad Company*, 363 S.W.2d 1 (Mo.1962) [3, 4]; *State v. Trotter*, 536 S.W.2d 877 (Mo.App.1976) [3]. Harris' testimony was offered not for the truth of what Jones said but to show the circumstances under which defendant made his statements. The question presented is not one of hearsay, it is one of relevancy. While a plausible argument of non-relevancy could be made had the question arisen on direct examination, relevancy was clearly established by defendant's cross-examination. It is simply not accurate to say that voluntariness of the confession was not in issue. The cross-examination by defendant was directed to establishing that the confession was the product of either trick or coercion. In addition, the jury was instructed that it must find the defendant's statements were freely and voluntarily made before it could consider the statements in arriving at its verdict. Such an instruction is required if requested. See MAI–CR 3.44, Notes on Use 1. The State had the burden of establishing the voluntariness of the defendant's

statements and in doing so was entitled to elicit the circumstances under which the statements were made. This is particularly true where defendant in cross-examination had elected to elicit part but not all of the conversation between Harris and defendant.

In fact, the question asked on redirect was not directed to what Jones told Harris but only to what Harris told defendant, and Harris was available for cross-examination on that subject. Whether or not Jones in fact made the statement attributed to him and whether it was true or not does not determine the admissibility of the testimony. Admissibility must be determined on the basis of the relevancy of what Harris told defendant prior to defendant making a statement. That relevancy is clear.

The foregoing discussion also points up the impropriety of treating this matter as plain error. Had a proper objection been made and proper relief been requested, the trial court could have cautioned or instructed the jury of the purpose of the testimony and the limitations on its relevancy. Defendant did not accord the court this opportunity.

I would affirm the judgment.