STATE of Missouri, Plaintiff-Respondent,

v.

Roxie Jean CLEVENGER, Defendant-Appellant.

No. 14491.

Missouri Court of Appeals, Southern District, Division One.

July 6, 1987.

Motion for Rehearing or to Transfer to Supreme Court Denied July 28, 1987.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Robert E. Stemmons, Stemmons & Stemmons, Mt. Vernon, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Roxie Jean Clevenger, appeals from her jury conviction of murder in the first degree, § 565.020,[1] and subsequent sentence of life imprisonment without eligibility for probation and parole. We reverse and remand.

The state's theory of the case was that Ms. Clevenger, the step daughter of Cleo Talley and the mother of Talley's son, Murl Payne, conspired with Murl and others to have Talley killed, and that Talley was shot and killed by Kenny Brown in furtherance of the conspiracy. The alleged motive for the killing was that Talley was going to get married, in which case he would change his will to the detriment of Ms. Clevenger, who was also the beneficiary of a life insurance policy insuring Talley's life.

Ms. Clevenger lived in Aurora, Missouri. Murl Payne, Kenny Brown, and the other alleged co-conspirators, who were Murl Payne's son, "Bubba," and Teddy Albert, lived in Illinois.

After Talley's death, and as a part of an ongoing police investigation, Murl Payne was taken into custody in the state of Illinois, and was questioned, on at least four occasions, by Sergeant Leland Keith of the Mason County, Illinois Sheriff's Department. While in custody, Payne made oral statements to Keith implicating Ms. Clevenger and, on February 16, 1985, gave a written confession and statement concerning events preceding the killing of Talley, which statement implicated Ms. Clevenger. At trial, Murl did not testify, but Sergeant Keith did. Keith testified that he had been present when Murl made statements regarding Talley's murder. Officer Keith also related, from notes he had taken while talking with Murl, the substance of telephone calls allegedly from Roxie Clevenger to Murl. He also had receipts for various amounts of money which Roxie had wired to Murl and explanations for what the money was to be used for in furtherance of the conspiracy. The officer was allowed to read to the jury a multipage statement given by Murl implicating Ms. Clevenger as the instigator of the murder.

In her defense, Ms. Clevenger denied having anything to do with the murder, and testified that the money she had sent Murl was for the purchase of a house for her in Illinois, her home in Aurora having burned.

On appeal Ms. Clevenger alleges trial court error in admitting into evidence out-of-court oral statements made by Murl Payne to Sergeant Keith that implicated her in the murder conspiracy, and the admission into evidence of Payne's written confession in which he also implicated Ms. Clevenger. The argument on these points is that the statements and confession were prejudicial hearsay, and that the admission of such evidence denied to Ms. Clevenger her constitutional right to confront and cross-examine her accusers.

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

■ The state contends the points were not properly preserved for appellate review, as no proper objection was made to the oral statements and written confession at time of trial, and were not raised in the motion for new trial.

In her brief, Ms. Clevenger contends that proper objections were made at trial during bench conferences, but, for some reason, were not transcribed by the court reporter. In a separate pleading, Ms. Clevenger has objected to the transcript as incomplete, and has asked us to take judicial notice of the difficulties she had in obtaining a copy of the trial transcript at all. We take such notice.

The record reflects that there was a fourteen minute bench conference regarding trial counsel's objections to the introduction into evidence of the written confession of Murl Payne, which is categorized in the transcript by the notation "(outside the hearing and presence of the jury)" or/and "(conference off record)." Appellate counsel contends that it was during this period that trial counsel objected to the admissibility of the exhibit on the ground that Murl Payne was not present at trial and that the state had made no showing that Payne was unavailable as a witness.

It is significant that the state has not contested such assertions in its brief filed here. We further note that the transcript was not prepared and filed here until September 26, 1986, which was over a year after the time of trial. This court had given the court reporter at least five extensions of time to prepare the transcript, and finally, on October 3, 1986, the reporter was held in contempt of court for failing to timely prepare and file an accurate transcript. We also note that the transcript has been supplemented by an affidavit of defendant's trial counsel, contending that he raised the objections to the statements of Murl Payne in a pretrial hearing and also at time of trial, and that such objections were overruled, but not recorded by the court reporter. This affidavit has not been contested by the state.

Based upon these facts, we would be derelict in our duty if we did not consider the points relied on concerning the admissibility of the written statement of Murl Payne and Sergeant Keith's testimony concerning what Payne told him. Even if we were to hold that Clevenger's trial counsel did not properly preserve the points relied on here, the question of whether an accurate record was made, and the constitutional magnitude of the questions raised, mandates that we review for plain error to determine whether manifest injustice resulted from the alleged trial court errors. Rule 30.20; *State v. Harris*, 670 S.W.2d 526, 528 (Mo.App.1984). We hold that it did and, therefore, reverse and remand.

Since Murl Payne did not testify as a state's witness, the in-court testimony by Sergeant Keith as to what Payne had told him implicating Roxie Clevenger was obviously hearsay, because the testimony was offered to prove the matter asserted, resting for its value on the credibility of the out-of-court declarant. *State v. Harris*, 620 S.W.2d 349, 355 (Mo.1981). As such, it was inadmissible unless the out-of-court statements of Payne qualify as evidence under an exception to the hearsay rule.

The state contends that Payne's oral and written statements are so qualified because they were declarations of a co-conspirator. The state concedes that generally out-of-court statements made by a co-conspirator after the termination of the conspiracy are inadmissible against the other conspirators, *State v. Tate*, 658 S.W.2d 940, 946 (Mo.App. 1983), but contends that at the time Payne made the statements to Keith, the conspiracy was still continuing for the purpose of concealing the crime of killing Talley, and to show that a co-conspirator was in possession of the fruits of the crime, citing *State v. Cornman*, 695 S.W.2d 443 (Mo. banc 1985), and *State v. Ronimous*, 319 S.W.2d 565 (Mo.1959), as authority for its position. The state's reliance on these cases to support its position on the issue at hand is misplaced.

■ It is true that when a conspiracy continues for any purpose, such as the concealing of a crime, or taking measures to defeat prosecution, the declarations of one co-conspirator are admissible against

the other, even if made after the completion of the crime which had been the objective of those conspiring. *State v. Smith,* 631 S.W.2d 353, 360 (Mo.App.1982). However, the state has not specified in its brief where any of the details of Payne's statements fit in the categories mentioned in *Smith* or any of the cases cited in support of its position.

In *State v. Ronimous,* supra, the written statement of defendant's accomplice Deprair, implicating Ronimous in two burglaries, was admitted into evidence after Deprair had testified as a state's witness, in which testimony he repudiated his prior written statement and said that he, and not Ronimous, had committed the burglaries. The Supreme Court said that since the written statement concerned hiding the loot, including money taken in the burglaries, and was made at the time when efforts were being made to conceal the fruits of the crime, that such evidence was admissible.

No such evidence was presented in this case, and there is nothing in the record to indicate that any attempts to conceal a weapon, or anything else to do with the killing of Talley, were being made at the time Payne made his statements to Keith.

In *State v. Cornman,* supra, the defendant was convicted of conspiring to murder Harrel Sims. The murder attempt backfired when Cornman, accompanied by a fellow conspirator, Jesse Morgan, shot Sims' neighbor, Davis Haas, by mistake, thinking he was Sims. The evidence was that about a week before the shooting, Morgan and Cornman met with Carney and accepted his offer of $5,000 to kill Sims. The state's chief witness at trial, William Stoney, was present during that meeting. Later, after the shooting, and during interrogation by members of the Missouri State Highway Patrol, Stoney agreed to transmit to the patrol a conversation with Carney via a concealed body microphone and transmitter. During the conversation that followed, Carney and Stoney agreed to say they did not know Cornman, had never talked to him, and that Carney and Stoney were apprehensive as to what Cornman

might say if interrogated. In answer to the contention that, even if there was a conspiracy to kill Sims it had terminated before the taped conversation occurred, the Supreme Court said that since the principal subject of the taped conversation was to conceal the conspiracy, and elude prosecution, the trial court did not err in receiving the taped conversation in evidence.

■ Here, there was nothing in Payne's statements to Keith that even remotely amounted to an attempt to conceal the conspiracy. To the contrary, Payne was falling all over himself to relieve the heat from him, and place it on Clevenger and Brown. Murl was doing his best to provide details of the crime, not to suppress them. *Cornman* is not applicable on its facts.

Since the only fair view of the oral and written statements of Murl Payne is that they were made after the conspiracy had ended, and were not made for the purpose of concealing the identity of the conspirators, or to conceal the fruits of the crime, such statements were inadmissible hearsay, *State v. Sykes,* 569 S.W.2d 258, 261 (Mo.App.1978), and deprived Clevenger of her right guaranteed to her by the United States and Missouri Constitutions to confront her accuser, Payne, and to cross-examine him relative to his credibility and involvement in the crime in question. U.S. Const. Amend. VI, Mo. Const. Art. 1, § 18(a); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *State v. Chernick,* 278 S.W.2d 741, 748; 280 S.W.2d 56 (Mo.1955); *State v. Sykes,* 569 S.W.2d 258, 261 (Mo.App.1978).

Sergeant Keith's testimony regarding Payne's oral statements and identification of his written statement implicating Clevenger plainly violated the rule against using a co-conspirator's statement after the conspiracy was ended, since the incriminating statements were not made in furtherance of the conspiracy, and did not otherwise fall within any exception of the hearsay rule. Since the evidence in question involved Clevenger in the planning of Talley's murder, it was prejudicial, and since

Clevenger was not given the opportunity to confront Payne in court, and cross-examine him concerning such statements, her constitutional rights were violated, which mandates reversal.

Since there was other evidence introduced from which the state may have made a submissible case, we remand for new trial. In doing so, we observe that additional points relied on in Clevenger's brief, such as improper closing argument by the prosecutor and admission into evidence of hearsay statements by some of the witnesses, may have been well taken, if such errors had been properly preserved.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

HOLSTEIN, J., concurs.

CROW, C.J., dissents and files dissenting opinion.

CROW, Chief Judge, dissenting.

I respectfully dissent.

At no time while Sergeant Keith was testifying about the *oral* statements made to him by Murl Payne did defendant's counsel[1] voice the objection now asserted on appeal. Additionally, nothing in defendant's motion for new trial complains about the receipt in evidence of any of Sergeant Keith's testimony regarding the *oral* statements made to him by Murl Payne.

The document referred to in the majority opinion as Murl Payne's "written confession" was identified at trial as State's Exhibit 23. Regarding its admission in evidence, the transcript shows:

"MR. SIFFERMAN:[2] I offer State's Exhibit 23.

MR. McPHERSON:[3] At this time, I would like to request a recess so we can discuss some of the things contained in the report. (JURY ADMONISHED) RECESS 9:58 a.m. TRIAL RESUMED 10:12 a.m.

(OUTSIDE THE HEARING AND PRESENCE OF THE JURY)
(CONFERENCE OFF RECORD)

THE COURT: Bob, does that look all right to you?

MR. McPHERSON: I can still read that.

THE COURT: Can you get it on the back side, too, Scott?

(CONFERENCE OFF RECORD)

THE COURT: Let the record reflect that on State's Exhibit 23, Exhibit 23, Mr. McPherson objected to that portion, Lines 9 and 10 of the statement, State's Exhibit 23, and that objection is sustained, and that the prosecuting attorney has covered that portion of the exhibit. Is that satisfactory, Bob? Does it look all right to you now?

MR. McPHERSON: Yes, Your Honor.

THE COURT: I think rather than call specific attention to that portion deleted and covered up, and—I think the witness should read—I am going to admit the exhibit, and I think, perhaps, Scott, you should have the witness read it and don't pass it to the jury.

MR. SIFFERMAN: All right, Judge.
RECESS: 10:14 a.m. TRIAL RESUMED 10:20 a.m.

(WITHIN THE HEARING AND PRESENCE OF THE JURY)

THE COURT: You may proceed, Mr. Sifferman.

MR. SIFFERMAN: With respect to—

THE COURT: Yes—

MR. SIFFERMAN: I offer State's Exhibit 23.

THE COURT: It will be admitted.

(MR. SIFFERMAN:) Q. Would you read what Merle [sic] Payne's confession was on February 16, 1985. Read that exhibit to the jury."

At that juncture, according to the transcript, Sergeant Keith began reading State's Exhibit 23, aloud. While he was

---

**1.** Attorney Robert McPherson represented defendant at trial.

**2.** Lawrence County Prosecuting Attorney Scott Sifferman.

**3.** Footnote 1, *supra.*

reading the sixth page of the seven-page statement, this occurred:

"[KEITH]: ... Roxie didn't sign the title. She said to have Sissy sign it so she did and I got it titled. The truck is titled in my name. While Roxie was here at Christmas, she told me that I got the job done and that Lonnie was next but that would have to wait. I knew the job she was talking about was getting Talley, getting Talley killed. I told her

MR. McPHERSON: If the Court, I would like to interrupt the witness and make—

THE COURT: Approach the bench.

(CONFERENCE OFF RECORD)

(OUTSIDE THE HEARING OF THE JURY)

MR. McPHERSON: I didn't see that in the statement.

THE COURT: Make whatever record you want to.

MR. McPHERSON: I object to any reference made about killing Lonnie Goes or any other evidence of a similar crime. The defendant is charged with only one crime here today and that is what we are defending today. I object to that last statement about Lonnie Goes going to be killed or whatever that statement says which the witness read. I thought all reference to killing Lonnie Goes was blacked out. I didn't notice that statement just read by the witness.

THE COURT: Mr. McPherson, the Court gave you an opportunity to go over the statement and sustained your objection to a portion of it, and such portion you objected to was blacked out by the prosecutor, and I asked you if that was satisfactory and you answered that it was. The Court suggested that the exhibit be read to the jury rather than passing it to them for them to read individually. If you want me to, I can admonish the jury to disregard any statement pertaining to the murder of Lonnie Goes, but I don't know—it might be exploiting it and—off the record.

(CONFERENCE OFF RECORD.)

THE COURT: Do you want me to admonish the jury concerning Lonnie Goes.

MR. McPHERSON: Yes, Your Honor, that last statement read by the witness.

THE COURT: Now, specifically, Mr. McPherson, you want me to admonish the jury to disregard the statement, 'Lonnie was next'?

MR. McPHERSON: Yes, Judge, I think that will be sufficient.

(CONFERENCE OFF RECORD)

(WITHIN THE HEARING OF THE JURY)

THE COURT: Ladies and Gentlemen, the Court ordered that portion of the confession read by the witness which states, 'And Lonnie is next' stricken. You will not consider that statement in arriving at your verdict in this case. You may proceed."

Sergeant Keith then read the remainder of State's Exhibit 23 to the jury.

It is manifest that nowhere in the above passages from the transcript did defendant's counsel register the objection to State's Exhibit 23 now asserted on appeal.

In defendant's motion for new trial, defendant assigned error in the admission of State's Exhibit 23 for the following reasons:

"a. The statement contained references to another crime of the same or similar [sic] nature as the crime charged.

b. An improper foundation was laid for the introduction of the statement in that the State failed to show that Murl Payne was unavailabile [sic] as a witness.

c. The statement was made while Murl Payne was under arrest and for the purpose of plea bargaining and in an attempt to curry favor with the authorities and had therefore lost it's [sic] probative value."

None of those averments raise the argument relied on here, i.e., that State's Exhibit 23 constituted inadmissible hearsay, and denied defendant her constitutional right to confront and cross-examine a witness against her.

Defendant's "Objections to Transcript," filed in this Court more than three months *after* we received the transcript, are, in my view, unconvincing. The only specific complaint lodged by defendant against the transcript is that it omits an alleged objection made by defendant's attorney to State's Exhibit 23. That objection, says defendant, was "on the ground that Murl Payne was not present at trial and that the state had made no argument or showing that Murl Payne was unavailable as a witness."

If defendant believed the transcript was inaccurate or incomplete, she had a remedy under Rule 30.04(g), Missouri Rules of Criminal Procedure (17th ed. 1986), which provides, in pertinent part:

"If there is any dispute concerning the correctness of any ... transcript, or if the parties fail to agree within a reasonable time as to its correctness, the ... transcript shall be settled and approved by the trial court."

Nothing in the record on appeal suggests that defendant made any effort to avail herself of the above procedure.

Most importantly, however, the segments of the transcript heretofore set forth demonstrate that the concern of defendant's counsel at trial was that State's Exhibit 23 contained references to the possible future murder of Lonnie Goes, and that counsel's objective during the proceedings outside the presence of the jury was to have the prosecutor mask the references to that subject in State's Exhibit 23, and to ensure that the jury would not become aware of them.

For the foregoing reasons, I am unwilling to assume that the objection now advanced by defendant was registered during Sergeant Keith's testimony, and I am convinced it was not raised in the motion for new trial. Consequently, the question I would address is whether the objection now advanced by defendant should be considered under plain error review.

In answering that question, I note that there was competent and substantial evidence of defendant's role in the conspiracy, apart from the oral statements of Murl Payne and State's Exhibit 23.

Darryl Harvey "Bubba" Payne, age 21 at time of trial, testified that prior to the murder, he and Teddy Albert talked to defendant near Cleo Talley's home, and told defendant they could make the killing look like a burglary or a robbery. Bubba quoted defendant as saying she did not want it done that way, that Cleo Talley usually came outside early in the morning, and that Bubba and Albert "could get him when he come out the front door." According to Bubba, Albert asked defendant about money, and defendant said not to worry about it, she would take care of it.

Bubba added that several weeks after the murder, he told defendant he did not like the idea of Cleo Talley getting shot. Defendant, according to Bubba, replied that he should not worry about it, and that she had "got it taken care of."

Teddy Albert, age 33 at time of trial, testified that prior to the murder, he and Bubba Payne talked to defendant near Cleo Talley's home, and that defendant said, "You can shoot him through a window." Defendant, according to Albert, pointed toward Talley's house and said to shoot him through the window at an angle, adding that Talley would be in bed. Albert also quoted defendant as saying, "Well, if you don't want to do it, come back in the morning and shoot them both when they are out there by the huller."

Monica Jean Payne, the daughter of Murl Payne and the sister of Bubba Payne, testified that on October 18, 1984, she was residing with her father in Forrest City, Illinois. Monica recounted that around "eight or eight-thirty" that evening, while at her home, she received a phone call from defendant. According to Monica, Murl Payne talked to defendant, saying "that the boys are on their way and not to go back to the farm ... [u]ntil midnight."

The State's evidence showed that Cleo Talley was shot by Kenny Brown between 7 and 8 p.m., October 18, 1984.

Defendant, who was residing in an "R-V" adjacent to Cleo Talley's home on the date of the murder, testified that she left

her residence around 5 p.m., that date, that she phoned Murl Payne long distance during the evening, and that she, accompanied by Lonnie Goes, returned to her residence sometime after 11:30 p.m. Upon arrival, she noticed a light burning in Cleo Talley's home. This prompted her to investigate, whereupon she discovered Talley's body.

The State's witnesses, in addition to Bubba Payne, Teddy Albert and Monica Payne, included Brown, who solemnly related the details of his shooting of Cleo Talley.

Monica Payne disclosed that around Thanksgiving, 1984, defendant was at Monica's residence in Illinois. On that occasion, according to Monica, defendant described what happened when she found Cleo Talley, and she talked about insurance and about paying Brown. Monica quoted defendant as saying she would have the money for Brown in a couple of weeks.

State's Exhibit 23 and Murl Payne's oral statements to Sergeant Keith, for the most part, supplied the same information presented by the testimony of the other State's witnesses. The only evidence furnished by State's Exhibit 23 and Murl Payne's oral statements to Sergeant Keith that is not found in the testimony of other witnesses is evidence of certain conversations between Murl Payne and defendant regarding the killing of Cleo Talley. As demonstrated earlier, however, the testimony of Bubba Payne, Teddy Albert, and Monica Payne supplied sufficient evidence to establish that defendant conspired to have Cleo Talley murdered.

Consequently, this is not an appeal in which the case against defendant hinges on State's Exhibit 23 and Murl Payne's oral statements to Sergeant Keith. I am therefore unconvinced that the receipt of that evidence rises to the level of plain error. Appellate courts employ plain error review sparingly, limiting its application to those cases where there is a strong, clear showing of manifest injustice or a miscarriage of justice. *State v. Hubbard*, 659 S.W.2d 551, 555–56[4] (Mo.App.1983); *State v. Harper*, 637 S.W.2d 170, 172[3] (Mo.App. 1982). Resort to plain error as a basis for appellate relief places a much greater burden on the accused; he must not only show that prejudicial error resulted, he must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Hubbard*, 659 S.W.2d at 556[7]; *State v. Miller*, 604 S.W.2d 702, 705–06 (Mo.App.1980).

Nothing in the record on appeal persuades me that manifest injustice or a miscarriage of justice will result if we eschew plain error review of the point on which the majority opinion ordains reversal. In saying this, I do not dispute the majority's conclusion that State's Exhibit 23 and Murl Payne's oral statements to Sergeant Keith were not made for the purpose of concealing the identity of the conspirators or to evade prosecution. It appears that such evidence, upon proper objection, should have been excluded. However, as I read the record, such objection was never made. If defendant's counsel at trial was derelict in that respect, or remiss in failing to ensure that the court reporter recorded the objections he did in fact make, those issues can be litigated and resolved in a proceeding under Rule 27.26, Missouri Rules of Criminal Procedure (18th ed. 1987). Said another way, if there was error in the receipt of the evidence now challenged on appeal, the error was that of defendant's counsel at trial, not the trial court.

I would not reverse the judgment on the basis utilized by the majority, and, as I find no basis for reversal in any of the other assignments of error raised by defendant, I would affirm the conviction.